**Vera Elizabeth GUTHRIE–
NAIL, Appellant**

v.

**The STATE of Texas**

**NO. PD–0125–14**

Court of Criminal Appeals of Texas.

September 16, 2015

Opinion on Denial of Rehearing
November 23, 2016

John G. Tatum Richardson, TX, for Appellant.

Andrea L. Westerfeld, Assistant District Attorney, McKinney, TX, Lisa C. McMinn, State's Attorney, Austin, for the State.

Keller, P.J., delivered the opinion of the Court in which Johnson, Alcala, Richardson, and Newell, JJ., joined.

One of appellant's allegations is that she was entitled to notice and a hearing prior to the trial court issuing its *nunc pro tunc* judgment. It is beyond dispute that she had such a right[1] and that this right was violated. The State argues, however, that a remand to the trial court would be a useless task because the record indisputably shows that the *nunc pro tunc* judgment properly issued and the law does not require a court to perform a useless task.[2] We conclude that a remand is necessary because the State's entitlement to a *nunc pro tunc* judgment depends on at least one issue of fact—whether, at the time of trial, the trial judge actually made a deadly-weapon finding—and this issue of fact has not been conclusively resolved in the State's favor.

## I.  BACKGROUND

### A.  Trial Court

Appellant was indicted for capital murder and conspiracy to commit capital murder. After a few days of trial testimony, the parties reached an agreement: The State waived the capital-murder charge in exchange for appellant pleading guilty to the conspiracy charge for a fifty-year prison sentence. The conspiracy count of the indictment alleged that appellant,

> with intent that capital murder, a felony, be committed, agree[d] with Mark Lyle Bell and Thomas Edward Grace, that they or one of them would engage in conduct that would constitute the offense, to wit:  enter the habitation of Craig Nail and cause the death of Craig Nail, and Mark Lyle Bell performed an overt act in pursuance of the agreement, to wit:  entered the habitation of Craig

---

**1.**  *See Shaw v. State,* 539 S.W.2d 887, 890 (Tex. Crim. App. 1976) ("Before any unfavorable nunc pro tunc orders are entered the person convicted should be given an opportunity to be present for the hearing, represented by counsel, in order to accord him due process of law.").

**2.**  *See Blanton v. State,* 369 S.W.3d 894, 900 (Tex. Crim. App. 2012).

Nail and shot Craig Nail with a firearm causing his death.[3] In her written judicial confession, appellant "admit[ted] to committing the offense of Conspiracy to Commit Capital Murder exactly as charged ... in Count II of the charging instrument." The trial judge questioned appellant at length about the voluntariness of her plea and the rights she was giving up, and he orally found her guilty of the offense "just as set forth in the indictment in this matter." However, the trial judge did not orally refer to a deadly-weapon finding, nor do the plea papers make any mention of a deadly-weapon finding. The original judgment reflected "N/A" in the space provided for "Findings on Deadly Weapon." The record also contains what appears to be a computer printout of docket sheet entries in connection with appellant's case that includes an entry notation of "Deadly Weapon Finding 42.12."

More than two months after the original judgment was entered, the trial judge signed a judgment *nunc pro tunc*, changing the "Findings on Deadly Weapon" entry from "N/A" to "Yes, a Firearm." The judgment *nunc pro tunc* also added a special finding that appellant "used or exhibited a deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited." The effect of this finding is that appellant will not be eligible for parole until she has served at least twenty-five years of her sentence.[4]

## B. Appeal

Appellant argued on appeal that the trial judge erred in entering the judgment *nunc pro tunc* for the following reasons: (1) the judgment corrected a judicial error rather than a clerical one; (2) there was no record support to conclude that appellant personally used or exhibited a deadly weapon; and (3) appellant's right to due process was violated because, "almost three months later," the trial judge "add[ed] a deadly-weapon finding without notice to appellant." In the body of the brief on the third claim, appellant argued both that the "State failed to give appellant notice in the indictment that it intend-

3. In his dissent, Judge Meyers contends that the trial court had no authority to enter a deadly-weapon finding because no evidence showed that appellant personally exhibited a deadly weapon and the offense of conspiracy does not require that a deadly weapon be exhibited. However, a deadly-weapon finding may be entered, not only if a defendant used or exhibited a deadly weapon personally, but also if the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX.CODE CRIM. PROC. art. 42.12 § 3g(a)(2). Because the conspiracy indictment alleged the overt act of shooting the victim "with a firearm causing his death" and also alleged that the conspirators intended to commit capital murder, the indictment would support a finding that a deadly weapon was used—and that appellant knew that a deadly weapon would be used—in the course of the conspiracy offense. Judge Meyers also contends that a deadly-weapon finding cannot be entered for the inchoate crime of conspira-

cy. But we have held that "all felonies are theoretically susceptible to an affirmative finding on the use or exhibition of a deadly weapon" and have upheld a deadly-weapon finding for the inchoate offense of solicitation. *Whatley v. State,* 946 S.W.2d 73, 76 (Tex. Crim. App. 1997). We see no reason to categorically exclude the offense of conspiracy from offenses to which a deadly-weapon finding may attach. *See id.* ("We see no reason to exclude the offense of solicitation from felonies susceptible to a deadly weapon finding.").

4. TEX. GOV'T CODE § 508.145(d)(1) ("An inmate serving a sentence for ... an offense for which the judgment contains an affirmative finding under [TEX.CODE CRIM. PROC. art. 42.12] Section 3g(a)(2) ... is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less.").

ed to seek a deadly-weapon finding" and that "appellant was not given notice that the trial court changed the original judgment to add an affirmative deadly-weapon finding."

The court of appeals concluded that the judgment *nunc pro tunc* was correctly entered because the indictment alleged the use of a deadly weapon, because appellant pled guilty to and judicially confessed her guilt to the conspiracy offense as set forth in Count II of the indictment, and because the trial judge orally found appellant guilty "as set forth in the indictment in this matter."[5] In addition, the court of appeals found that the docket entry referring to a deadly-weapon finding provided further support for the State's contention that the trial judge found that appellant used a deadly weapon during the offense.[6] Finally, the court of appeals construed appellant's notice complaint to be a complaint that the State failed to provide notice of its intent to seek a deadly-weapon finding.[7] The court of appeals concluded that the State had provided sufficient notice.[8]

## II. ANALYSIS

An affirmative deadly-weapon finding must be an "express" determination in order to be effective.[9] Although affirmatively answering a deadly-weapon special issue (jury) [10] or explicitly saying that a deadly-weapon finding is being made (judge) satisfies the express-determination requirement, this Court has concluded that certain less explicit language also constitutes an express determination.[11] This includes express words, in a verdict or judgment, that refer to a portion of the charging instrument that includes a deadly-weapon allegation.[12] Moreover, in a bench trial, a trial judge need not include a deadly-weapon finding in the oral pronouncement of judgment; if the charging instrument alleged a deadly weapon, the finding may be included for the first time in a written judgment.[13]

The question arises whether the trial judge in a bench trial has the discretion to decline to make a deadly-weapon finding, even when the use of a deadly weapon is a necessary element of the charged offense. We conclude that, in *Hooks v. State*,[14] we

---

5. *Guthrie–Nail v. State*, No. 05–13–00016–CR, 2014 WL 61037, *3–*5, 2014 Tex.App. LEXIS 206, *10–*12 (Tex. App.—Dallas January 8, 2014) (not designated for publication).

6. *Id.* at *4–5, 2014 Tex.App. LEXIS 206 at *12–13.

7. *Id.* at *5, 2014 Tex.App. LEXIS 206 at *14.

8. *Id.*

9. *Ex parte Empey*, 757 S.W.2d 771, 774 (Tex. Crim. App. 1988) (quoting *Ex parte Brooks*, 722 S.W.2d 140, 142 (Tex. Crim. App. 1986)).

10. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).

11. *See Empey*, 757 S.W.2d at 774 ("Given that the verdict of a jury may in certain circumstances constitute an affirmative finding being made, we hold that where a charging instrument alleges accused caused death by shoot-

ing an individual with a firearm and a trial judge is trier of fact, a recitation in the judgment that offense is "murder with a firearm" coupled with a finding that accused is "guilty of the offense as confessed and set forth above," approved and confirmed in the sentence, constitutes an affirmative finding made by the trial court."); *Polk*, 693 S.W.2d at 394 ("Thus, if the indictment by allegation specifically places the issue before the trier of fact (i.e. '.... by stabbing him with a knife, a deadly weapon ....'), then an affirmative finding is de facto made when the defendant is found guilty 'as charged in the indictment.' ").

12. *See* authorities in previous footnote.

13. *Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005).

14. 860 S.W.2d 110 (Tex. Crim. App. 1993).

answered that question "yes" by necessary implication. In *Hooks*, the indictment specified that the defendant committed the offense of aggravated assault with "a deadly weapon, to wit: a firearm." [15] In a bench trial, the trial judge found the defendant guilty and placed her on probation.[16] The judgment specified that the defendant was found "guilty of the felony offense of aggravated assault, a third degree felony as charged in the indictment. DW." [17] Although the judgment did not separately and explicitly enter a deadly-weapon finding, the court of appeals held that, under the circumstances, "the trial court effectively made a de facto affirmative finding." [18] And because the probation statute does not permit the imposition of probation in a bench trial if a deadly-weapon finding is made, the court of appeals concluded that the judgment imposing probation was void.[19]

We reversed, holding that, because the trial judge did not *enter* a deadly-weapon finding, the probation statute "will not operate as a bar to probation under the facts of [the defendant's] cause." [20] While the Court's opinion focused on the entry, rather than the making, of a deadly-weapon finding, the Court could not have arrived at its result if the trial judge did not in fact have discretion to decline to make a deadly-weapon finding after finding the defendant guilty as charged. If the trial judge in *Hooks* necessarily made a deadly-weapon finding when it found the defendant guilty as charged in the indictment for an offense that contained a deadly-weapon element, then he was required to enter that finding in the judgment.[21] A year before *Hooks*, we held that "an appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source." [22] So, if the trial judge had necessarily made a deadly-weapon finding in *Hooks*, the court of appeals would have had the authority to make the record speak the truth by reforming the judgment to add the deadly-weapon finding. But such reformation would have resulted in an illegal judgment, leaving a remand for further proceedings as the only available option.[23]

---

15. *See Hooks v. State*, 838 S.W.2d 643, 645 (Tex. App.—Dallas 1992), *rev'd*, 860 S.W.2d 110 (1993).

16. *Hooks*, 860 S.W.2d at 111.

17. *Id.* at 114.

18. *Hooks*, 838 S.W.2d at 645.

19. *Id.* at 644–45.

20. *Hooks*, 860 S.W.2d at 113–14.

21. *See Empey*, 757 S.W.2d at 774–75 (Denying relief from a *nunc pro tunc* order adding a deadly-weapon finding: "So in the instant cause, while in its March 28, 1978 judgment the trial court made a finding that applicant used a firearm, during commission of the offense of murder, the judge did not enter a separate and distinct affirmative finding *as required by the statute*.") (emphasis added).

22. *French*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

23. It is for this reason that we must disagree with Judge Yeary's contention that "nobody tried to reform the judgment" in *Hooks* to reflect that a deadly-weapon finding had been made, such that its entry was mandatory. If the entry of a deadly-weapon finding were in fact mandatory, the only thing that could have been done in *Hooks* would have been to vacate the judgment because judge-ordered probation was not authorized when a deadly-weapon finding is entered. The court of appeals in *Hooks* explicitly found that "specific performance of the sentence [was] not an available option" and that "[t]he only remaining remedy [was] to withdraw Hook's sentence and return the parties to their original positions." *Hooks*, 838 S.W.2d at 644.

In his dissent in *Hooks*, Judge Baird argued that the trial judge indeed had necessarily made a deadly-weapon finding, and that, as a result, he was required to enter that finding, having no discretion to do otherwise.[24] Judge Baird concluded that, "[u]nder the majority's holding, the entry of an affirmative finding is now discretionary."[25]

*Hooks* declined to overturn the imposition of probation despite the characterization of the Court's holding in Judge Baird's dissent and despite the existence of prior cases recognizing the duty of the trial judge and the power of an appellate court to enter a deadly-weapon finding if it has been made. The only rational explanation for this result is that the trial judge in *Hooks* had the authority to decline to make a deadly-weapon finding and that a

possibility existed that he in fact declined to do so.[26]

Moreover, that result renders our treatment of the statute the same for trial judges as for juries. If a deadly-weapon special issue is submitted to a jury, the jury may answer that issue "no" even in a case in which use of a deadly weapon is a necessary element of the offense. Such a result in a jury trial would be internally inconsistent, but the law does not bar inconsistent verdicts.[27] We conclude that *Hooks* decided, by necessary implication, that a trial judge has the discretion to decline to make a deadly-weapon finding even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element.[28]

---

**24.** *Hooks*, 860 S.W.2d at 116 (Baird, J., dissenting).

**25.** *Id.* at 116.

**26.** The fact that the trial judge placed the defendant on probation when a deadly-weapon finding would have precluded such is some indication, though not conclusive, that the trial judge had declined to make a deadly-weapon finding. *See Ex parte Lucke*, 742 S.W.2d 818, 820 (Tex. App.—Houston [1st Dist.] 1987, no pet.) ("The judgment in this case does not reflect a 'separate and specific' affirmative finding that the defendant used a deadly weapon.... These facts, coupled with the fact that the court accepted the application for probation and referred appellant to the probation department, evidences an intent not to find that appellant used a deadly weapon.").

**27.** *See United States v. Powell*, 469 U.S. 57, 68–69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

**28.** *See Garza v. State*, 435 S.W.3d 258, 261 (Tex. Crim. App. 2014) ("A careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary implication.... While on

its face, *Maxwell* appeared to address a pure retroactivity question, it held by necessary implication that a claim asserting an Eighth Amendment violation under *Miller* was not subject to procedural default. The majority opinion specifically acknowledged that, on direct appeal, the court of appeals 'rejected [Maxwell's] claim that his automatic sentence violated the Eighth Amendment because he had never raised that claim in the trial court.' Nonetheless, the majority granted Maxwell habeas corpus relief by vacating his life-without-parole sentence and remanding the case for further sentencing proceedings permitting the factfinder to determine whether Maxwell's sentence should be assessed at life with or without parole."). Judge Yeary contends that the *Maxwell* case is distinguishable from *Hooks* because *Maxwell* was an original proceeding while *Hooks* was a discretionary-review proceeding. We disagree because (as explained in our footnote 23 and the associated text) the court of appeals in *Hooks* did everything that was necessary to effectuate a holding that entry of a deadly-weapon finding was required because one had been made. As we explained, because the entry of a deadly-weapon finding would have made the probation judgment in *Hooks* illegal, the court of appeals exercised the only option available upon a conclusion that a deadly-weapon finding must be entered—undoing the sentence.

In the present case, the trial judge's oral pronouncement of judgment stated that appellant was guilty of the offense of "conspiracy to commit capital murder just as set forth in the indictment," but the original written judgment said "N/A" under the section titled "Findings on Deadly Weapon." The written entry in the judgment would seem to be an explicit determination that a deadly-weapon finding was *not* being made, and it is more explicit than the trial judge's oral pronouncement of guilty "as set forth in the indictment." At a hearing, the parties might be able to shed light on exactly what the trial judge did or how the "N/A" notation came to be in the judgment, and they might be able to determine when and under what circumstances the docket-sheet entry was made.

We agree with the State that if the record showed indisputably that the failure to enter a deadly-weapon finding was a clerical error—for instance, if the judge had orally pronounced that he was making a deadly-weapon finding and the judgment was silent instead of saying "N/A"—then remanding the case to the trial court would be a useless task. But the record in this case is far from conclusive; if any-

thing, it more readily supports the lack of an affirmative finding than the existence of one. Because the record does not conclusively establish that a deadly-weapon finding was made at or before the time the written judgment was signed, remanding this case for a hearing on the *nunc pro tunc* is not a "useless task." [29]

We reverse the judgment of the court of appeals and remand the case to the trial court for proceedings consistent with this opinion.

Richardson, J., filed a concurring opinion in which Johnson and Newell, JJ., joined.

Meyers, filed a dissenting opinion.

Keasler, J., filed a dissenting opinion in which Hervey and Yeary, JJ., joined.

Yeary, J., filed a dissenting opinion in which Keasler and Hervey, JJ., joined.

Richardson, J., filed a concurring opinion in which Johnson, J., and Newell, J., joined.

I join the majority opinion. I, too, am not convinced that the judgment *nunc pro*

---

Consequently, if the court of appeals in *Hooks* had been correct that the trial court had necessarily made a deadly-weapon finding, then we should not have overturned its judgment. In overturning its judgment, we held by necessary implication that the court of appeals was not correct in that regard. Judge Yeary also observes that the author of the Court's opinion in the present case opposed the deriving of a holding by necessary implication from *Maxwell. See Garza,* 435 S.W.3d at 271–72 (Keller, P.J., dissenting). The short answer to that observation is that the author lost that battle, as her opinion was a dissent.

29. Judge Keasler is mistaken in his claim that we are impugning the trial judge's credibility. It is not the trial judge's fault that our opinions have confused the issue so much that even members of this Court cannot agree about what the law allows and what the law

requires. The possibility exists that the trial judge was laboring under a mistaken impression of the law when he entered the *nunc pro tunc* order. If he adhered to Judge Keasler and Judge Yeary's views, which we have rejected today, he could have entered the *nunc pro tunc* on the basis that he was required to do so by the nature of the offense itself, regardless of whether he actually made a deadly-weapon finding at the time of judgment. In any event, the trial judge erred in failing to accord appellant a hearing before issuing an adverse *nunc pro tunc* judgment, and our correction of that error says nothing about the trial judge's credibility. And while an appellate court may need to address in a given case whether a remand for a hearing on a *nunc pro tunc* order would be a useless act, a trial court should never decline to hold a *nunc pro tunc* hearing in the first instance on that basis.

*tunc* in this case was properly issued, and I agree that this matter should be remanded to the trial court for a hearing on this issue.

A court may not properly grant a judgment *nunc pro tunc* to change the judgment "to reflect what it believes should have been done."[1] Rather, a *nunc pro tunc* correction "must reflect the judgment that was actually rendered."[2] The record does not clearly show whether the trial court was correcting the judgment to reflect what *was* done, or whether the trial court was correcting the judgment to reflect what *should* have been done.

Nothing was said on the record at the time of the plea indicating that the trial judge made an affirmative finding of a deadly weapon, or that he had intended to enter one on the judgment. In fact, the original judgment contains an "N/A" in the section entitled "Findings on Deadly Weapon." Such a notation would seem to indicate that a deadly weapon finding was "not applicable," and suggests that the trial judge did not expressly make, nor intend to make, an affirmative finding of a deadly weapon.

On the other hand, the trial docket sheet contains a "Deadly Weapon Finding 42.12"

notation. This is not a notation in the trial judge's handwriting on the court's case file docket sheet, but is instead a computer printout generated by the district court clerk. While it is some support for concluding that a deadly weapon finding was made at the time of the plea, it is not dispositive, since the record is devoid of any mention by the judge of his intent to enter a deadly weapon finding.

Because there is a lack of clarity as to whether the trial judge intended to enter an affirmative finding of a deadly weapon on the original judgment, I agree that a hearing is necessary to afford Guthrie–Nail the opportunity to be heard on this issue.[3] Thus, remanding the matter to the trial court for such purpose would not be a "useless task."[4]

A hearing would also afford the trial judge an opportunity to provide an explanation, if there is one, as to why there was no mention of a deadly weapon finding on the record at the time of Guthrie–Nail's plea. The presence of an affirmative finding of a deadly weapon on a judgment convicting a defendant of a non–3g offense[5] has a significant impact on a defendant's parole eligibility.[6] Even though the

---

1. *Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007).

2. *Blanton v. State*, 369 S.W.3d 894, 899 (Tex. Crim. App. 2012) (citing *Jones v. State*, 795 S.W.2d 199, 200 (Tex. Crim. App. 1990)).

3. *Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976). Moreover, although the issue of the voluntariness of Guthrie–Nail's plea would not be the subject of such a hearing, nor affect the validity of the judgment *nunc pro tunc*, if Guthrie–Nail believes that she was misadvised by her attorneys or misled regarding the terms of her plea bargain, she could seek relief by filing an application for writ of habeas corpus pursuant to Texas Code of Criminal Procedure Article 11.07.

4. *Blanton v. State*, 369 S.W.3d at 900.

5. TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(1). In this case, the offense to which the appellant pled, conspiracy to commit capital murder, is not listed in Article 42.12, section 3g(a)(1).

6. *See* TEX. CODE CRIM. PROC. art. 37.07, § 4(a). If the defendant is convicted of an offense listed in Section 3g(a)(1), or where there is an affirmative finding under Section 3g(a)(2) (a deadly weapon finding), the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is not convicted of an offense under section 3g(a)(1), and there is no affirmative finding under section 3g(a)(2), the defendant is eligible for parole after one-fourth of the sentence imposed, or 15 years, whichever is less.

impact of a deadly weapon finding on parole eligibility does not fall under the statutory admonishment regarding "range of punishment,"[7] in this particular case, a deadly weapon finding would mean Guthrie–Nail would have to serve a minimum of twenty-five years of her sentence before becoming eligible for parole. This trial judge was conscientious and thorough in admonishing Guthrie–Nail,[8] which is why the absence of any mention of a deadly weapon finding is puzzling. Nevertheless, advising a defendant whether a deadly weapon finding will be entered, or its impact on parole eligibility if one is entered, is not a statutorily required admonishment.[9] Thus, the trial judge's failure to admonish Guthrie–Nail regarding an affirmative finding of a deadly weapon would not necessarily be indicative of his intent. However, if the subject of a deadly weapon finding was simply not discussed amongst the parties, nor considered by the trial judge, at the time of the plea, then the judgment *nunc pro tunc* should not have been issued to correct a missed opportunity—in other words, "to reflect what [the trial court] believes should have been done."[10]

With these additional comments, I concur.

Meyers, J., filed a dissenting opinion.

In the majority's eagerness to allow the trial judge in this case to alter his previous properly entered judgment, the majority has now carved out an exception to the *nunc pro tunc* law, which has traditionally been used only to correct a clerical error. In the process, the majority has also established the precedent that a deadly-weapon finding can be entered for an inchoate crime of conspiracy. This is exactly what the majority did in *Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013), where we allowed authorities to use the independent-source doctrine and swear out a warrant based on a prediction of a future crime. The main problem is that we are now saying that a deadly-weapon finding can be entered upon conviction for conspiracy to commit an offense. Conspiracy is not a crime which, by necessity, employs a deadly weapon and the judge in this case entered "N/A" for the deadly-weapon finding. As Appellant raised in her petition

7. *See Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) (holding that a deadly weapon finding is not part of the defendant's sentence).

8. For example, the trial judge admonished Guthrie–Nail regarding the following: about the waiver of her right to appeal; about the range of punishment applicable to both counts of the indictment; that eligibility for parole does not guarantee that parole will be granted; about the consequences of the plea if she were not a U.S. citizen; about the waiver of a jury trial; about whether she was taking any medication that would have clouded her ability to make a free and voluntary decision or interfere with her thought processes; and about whether she was pleading guilty hoping for a pardon or parole. Guthrie–Nail was then admonished on the record by one of her three attorneys. Her attorneys and the prosecutors were then given an op-

portunity to address the court. There were several opportunities for the trial judge and the attorneys to note on the record whether there would be a deadly weapon finding, particularly when the judge admonished Guthrie–Nail regarding the length of her sentence and the eligibility for parole. The terms "affirmative finding" or "deadly weapon" were not mentioned at any time during the plea.

9. TEX. CODE CRIM. PROC. art. 26.13 (containing the list of admonishments the trial court must give prior to accepting a plea of guilty or a plea of *nolo contendere*). Although not statutorily required, the better practice for a trial court judge would be to include an oral admonishment regarding whether a deadly weapon finding is going to be entered on the judgment.

10. *Collins*, 240 S.W.3d at 928.

for discretionary review, there is no evidence that she used or exhibited a deadly weapon during the commission of the conspiracy.

Had Appellant pled guilty as a party to the *capital murder* committed by Mark Lyle Bell, then perhaps a deadly-weapon finding could have been assumed based on the nature of the crime, but that did not occur here. The commission of the capital murder is a completely separate crime from the conspiracy to commit capital murder. Thus, while the court of appeals is correct that a judge may enter a deadly-weapon finding based upon a guilty plea for a crime which, by necessity, employs a deadly weapon, conspiracy is not such a crime, and the point is moot.

The majority tries to justify the ability to now have a deadly-weapon finding for conspiracy by quoting Code of Criminal Procedure article 42.12 section 3g(a)(2), which refers to the defendant being a party to the crime during which the deadly weapon was used or displayed. Obviously, in this case, the defendant did not plead guilty to that crime, only to the conspiracy. In fact, the State waived the charge that could have possibly made the defendant a party to the offense involving the deadly weapon.

Even if a conspiracy conviction could warrant a deadly-weapon finding, *nunc pro tunc* should be used only to correct a clerical error. The judgment actually rendered in this case was not incorrect or invalid without the deadly-weapon finding. As such, the omission of the finding was not a clerical error that would properly be corrected with a judgment *nunc pro tunc.*

For example, if a jury returns a sentence of 25 years but the judgment is incorrectly entered as a sentence of 15 years, then a judgment *nunc pro tunc* could correct the judgment to reflect the sentence actually returned by the jury. Here, however, there was no mistake to correct. The judge clearly did not make an affirmative deadly-weapon finding at the time the judgment was entered, and a judgment *nunc pro tunc* cannot serve to change a properly entered judgment.

Although the majority admits that the record in this case "more readily supports the lack of an affirmative finding than the existence of one" the majority again comes to the rescue of the State and remands this case for a hearing. The majority failed to recognize that a deadly-weapon finding is not even allowed in a conspiracy case such as this.[1] I would conclude that the court of appeals erred in holding that, based upon Appellant's plea of guilty to the conspiracy offense as alleged in the indictment, the trial court necessarily found that Appellant used a deadly weapon during that offense. Therefore, I respectfully dissent.

Keasler, J., filed a dissenting opinion in which Hervey and Yeary, JJ., joined.

The central issue in this case is whether the judge, in accepting Vera Guthrie–Nail's guilty plea and finding her guilty of conspiracy to commit capital murder as alleged in the indictment expressly alleging the use of a deadly weapon, has the discretion to nonetheless withhold a deadly-weapon finding. Looking solely to a

1. This isn't rocket surgery, but unfortunately even the other dissents are oblivious to the true nature of this case. No one realizes that you simply cannot have a deadly-weapon finding in this type of conspiracy case and that you cannot use a judgment *nunc pro tunc* to later add a deadly-weapon finding to an already accurate judgment. These dissenting judges are just angry because the majority has decided to rearrange the deck chairs before the ship goes down. By the time this is over with, this defendant will be the first in the State of Texas to get a deadly-weapon finding upon conviction for a crime of conspiracy.

distinguishable case and using a series of inferential leaps, the Court is satisfied that he does. The Court then incorrectly approaches the *nunc pro tunc* judgment's propriety as if it were an issue of fact requiring a remand to develop a factual record surrounding the new judgment's entry. Because I believe the Court errs in both respects, I dissent.

I.

The Court relies exclusively on *Hooks v. State*[1] to support its conclusion that judges may, at will, withhold deadly-weapon findings. But it is not particularly convincing on the issue that the Court uses it for. *Hooks* presented the Court with a case that required it to address the repercussions of the lack of entering a deadly-weapon finding. Hooks challenged the imposition of probation for the offense of aggravated assault by threat with a firearm, a deadly weapon *per se.*[2] We held that even if the judge "made" a deadly-weapon finding, the judge's failure to "enter" the judgment did not render Hook's probation void.[3] *Hooks* cannot support the weight the Court places on it. The opinion did not address whether the absence of a deadly-weapon finding in a judgment was proper nor did it involve a judgment *nunc pro tunc*. Instead, *Hooks* only addressed the consequences of judgments lacking a memorialized deadly-weapon finding. The Court withheld judgment on whether "the trial judge 'simply declined to enter the additional affirmative finding in the judg-

ment' " and did not expand the grant of review to consider that separate question,[4] the exact proposition for which the Court cites this case. The Court's reading of *Hooks,* and the necessary implication it finds within its logic, does not ring true, especially when the implication is something we expressly rejected addressing.

Moreover, before deciding *Hooks,* this Court decided *Ex parte Poe.*[5] There, we noted that Texas Code of Criminal Procedure article 42.12, § 3g(a)(2) requires a two-step process regarding deadly-weapon findings: (1) the trier of fact must make an affirmative deadly-weapon finding, and (2) the finding shall be entered into the court's judgment.[6] Once a deadly-weapon finding is made, the judge is statutorily obligated to enter the deadly-weapon finding in the judgment.[7] "The trial judge has no discretion to do otherwise. Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature."[8] Therefore, we held that entering a judgment *nunc pro tunc* to reflect what the factfinder—not necessarily limited to a jury—determined was proper.[9]

Furthermore, *Hooks's* significance wanes in light of our more recent precedents. In *Ex parte Huskins,* the indictment alleged that Huskins "did then and there knowingly discharge a firearm at and in the direction of a vehicle, and [he] was then and there reckless as to whether the vehicle was occupied."[10] After the judge adjudicated Huskins's deferred adju-

---

1. *Hooks v. State,* 860 S.W.2d 110, 111 (Tex. Crim. App. 1993).

2. *Id.* at 111.

3. *Id.* at 113–14.

4. *Id.* at 114, n. 7.

5. 751 S.W.2d 873 (Tex. Crim. App. 1988).

6. *Id.* at 875.

7. *Id.* at 876.

8. *Id.*

9. *See id.*

10. *Ex parte Huskins,* 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

dication, the court's judgment reflected a deadly-weapon finding. Huskins complained that the deadly-weapon entry was improper. When Huskins pleaded guilty to the deadly-conduct allegation, he confessed that he was the same person named in the indictment and that he committed the offense changed in the indictment.[11] Although the case did not involve a judgment *nunc pro tunc*, we held that "[b]y properly admonishing [Huskins] and then accepting his guilty plea to the indictment, the trial court necessarily determined that [Huskins] used a deadly weapon in the commission of the offense," and the entry of the finding was proper.[12]

*Crumpton v. State*,[13] an authority noticeably absent from the Court's opinion, also limits the extent the Court wishes to stretch *Hooks*.[14] *Crumpton* added to the "making" side of deadly-weapon findings. It held that,

> If a deadly weapon is anything that is capable of causing death or serious bodily injury, and the indictment alleges that the defendant caused death or serious bodily injury, and the jury finds the defendant guilty as charged in the indictment, the verdict is necessarily a finding that a deadly weapon was used.[15]

It follows that, after a finding of guilt for an offense defined by an indictment alleging the use of a deadly weapon, a deadly-weapon finding is necessarily made. Article 42.12, § 3g(a)(2) and *Poe* then require the deadly-weapon finding to be entered.

The entry of a deadly-weapon finding is not a discretionary act; it must follow the making of a deadly-weapon finding.

The *Crumpton* logic follows that found in *Polk v. State*, noting that in some instances an affirmative finding will arise as a matter of law.[16] The *Polk* Court held that a trier of fact may make a deadly-weapon finding by virtue of simply convicting a defendant based upon an indictment that expressly contained and required a deadly-weapon finding.[17] "If the indictment by allegation specifically places the issue before the trier of fact ..., then an affirmative finding is de facto made when the defendant is found guilty 'as charged in the indictment.'"[18] "If the trier of fact finds that a pistol has been used in the commission of the offense ..., then it has found that a deadly weapon has been used since a pistol is a deadly weapon *per se*."[19] In this case, the trier of fact made a deadly-weapon finding as a matter of law in adjudicating Guthrie–Nail guilty as charged in the indictment that specifically included the term "firearm"—a deadly weapon *per se*.[20]

To argue that the cases are reconcilable based on the trier of fact—judge versus jury—advances an artificial distinction between the two. In the present context, both are charged with deliberating on the evidence in determining guilt or innocence within the confines of the charging instrument containing the offense's statutory elements of the offense and descriptive averments. Furthermore, Article 42.12,

---

11. *Id.*

12. *Id.* at 819–20.

13. 301 S.W.3d 663 (Tex. Crim. App. 2009).

14. *See id.* at 668–69 (Keller, P.J., dissenting) (finding *Crumpton* "inconsistent with the reasoning in *Hooks v. State*.").

15. *Crumpton*, 301 S.W.3d at 665.

16. *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).

17. *Id.*

18. *Id.*

19. *Id.*

20. Tex. Penal Code § 1.07(a)(17).

§ 3g(a)(2) itself does not differentiate between finders of fact. There is no manifest legislative intent from the statute's plain language that deadly-weapon findings and their entry operate differently depending on the trier of fact. The statute makes no mention of any discretionary role served by the presiding judge. It simply provides that once a deadly-weapon finding is made, it shall be entered in the judgment. And in the event that the deadly weapon was a firearm, that must also be entered.

## II.

Even assuming that *Hooks* permits judges to discretionarily withhold a deadly-weapon finding, the record does not suggest that is what happened here. The record as a whole establishes that the error corrected by the *nunc pro tunc* was clerical, not an impermissible judicial error.[21] The contested judgment's validity turns on whether the judge necessarily made an affirmative deadly-weapon finding contemplated by Article 42.12, § 3g(a)(2) when he accepted Guthrie–Nail's guilty plea and judicial confession to Count II and found her guilty of Count II as alleged in the indictment. The "N/A" that appeared in the original judgment's place designated for a deadly-weapon finding has an unexplained hold on the Court. The Court finds the "N/A" "seems to be an express determination that a deadly[-]weapon finding was *not* made."[22] However, this view falsely presumes that the "N/A" is not the clerical error the judge sought to correct in the first place by entering the judgment *nunc pro tunc.* The Court seemingly would affirm the

judgment *nunc pro tunc* if the deadly-weapon finding was orally pronounced at Guthrie–Nail's sentencing.[23] Although a judge may, he does not need to orally pronounce a deadly-weapon finding in pronouncing sentence when the use of a deadly weapon is clear from the face of the indictment.[24] Why must an optional pronouncement be required to overcome the Court's exalted "N/A"?

I would find the judgment *nunc pro tunc* properly entered because the judge necessarily made a deadly-weapon finding, and therefore its entry was statutorily required. In the plea hearing, Guthrie–Nail responded affirmatively when the judge asked her, "Did you commit this crime just as it's set forth in Count II of this indictment?" The State offered Guthrie–Nail's judicial confession in which she confessed "to committing the offense of conspiracy to commit capital murder exactly as charged in the charging instrument or as a lesser offense charged in the (Count II of the indictment)."[25] After admitting the State's evidence in support of the plea, the judge found "beyond a reasonable doubt that you [Guthrie–Nail] are guilty of the first[-]degree felony offense of conspiracy."

The repeated references to the indictment's Count II are telling in two ways. Count II specifically alleged capital murder as the object of the conspiracy, which by its definition requires the use of a deadly weapon.[26] Additionally, the indictment alleged that Guthrie–Nail agreed with her co-conspirators that one of their number would cause the death of Craig Nail and that the overt act performed involved Nail's death with a firearm, a

---

21.  See *Ex parte Poe,* 751 S.W.2d at 876.

22.  *Ante,* at 4–5 (emphasis in original).

23.  *Id.*

24.  *Ex parte Huskins,* 176 S.W.3d at 821.

25.  Parentheses in original.

26.  See *Crumpton,* 301 S.W.3d at 664.

deadly weapon *per se*.[27] The indictment's language and the present facts surrounding Guthrie–Nail's plea are distinguishable from those we have found insufficient to warrant a deadly-weapon finding.[28] Here, the indictment specifically alleged a deadly weapon *per se*, and the plea hearing contained a judicial finding that Guthrie–Nail was guilty beyond a reasonable doubt "as set forth in the indictment." Further, on the date of the plea, the trial docket sheet bears a notation germane to this case's question. In its original typeface and formatting, it contains the following:

> **Sentence** (Judicial Officer: Rusch, Mark)
>
> 2. Conspiracy to Commit CAPITAL MURDER BY TERROR THREAT/OTHER FELONY (Conspired)
>
> > DC–Texas Dept. of Criminal Justice—Prison
>
> Confinement to Commence 09/12/2012
>
> > 50 Years, TDC, Department of Corrections
> >
> > Deadly Weapon Finding 42.12

It is not dispositive of the issue, but including "Deadly Weapon Finding 42.12" on the docket sheet is additional evidence that, when viewed in the totality of the sentencing, strongly supports the conclusion that the judge made an affirmative deadly-weapon finding.[29] Although the indictment and judicial confession may not support a deadly-weapon finding on the direct liability theory under Article 42.12, § 3g(a)(2)—a finding that she personally used or exhibited a deadly weapon—it was sufficient under a vicarious liability theory. Section 3g(a)(2) also commands the deadly-weapon finding's entry if there is an affirmative finding that the defendant "was a party to the offense and knew that a deadly weapon would be used or exhibited." I find no impediment in imposing a deadly-weapon finding for the conspiracy offense as alleged in this indictment, an offense that imposes criminal culpability in a manner legally akin to vicarious or party liability.[30] I therefore would conclude that, by accepting Guthrie–Nail's guilty plea and judicial confession, the judge necessarily made an affirmative finding that Guthrie–Nail was sufficiently connected to the homicide and knew that a deadly weapon would be used.[31] As a result, the judge properly corrected a clerical error in the original judgment by entering the judgment *nunc pro tunc*.

### III.

It is unclear what the Court hopes to gain by remanding. Despite what is traditionally characterized as a question of

---

27. Tex. Penal Code § 1.07(a)(17).

28. *See, e.g., Ex parte Dopps*, 723 S.W.2d 669 (Tex.Crim.App.1986) (vacating the judgment *nunc pro tunc* adding a deadly-weapon finding because the manslaughter did not allege a deadly weapon *per se* nor particularly alleged the weapon was a deadly weapon by the manner of its use).

29. *See generally Stokes v. State*, 277 S.W.3d 20, 24–25 (Tex. Crim. App. 2009) (considering the trial judge's docket notation on the issue of presentment of a motion for new trial).

30. *Compare* Tex. Penal Code § 15.02 ("Criminal Conspiracy") *with* Tex. Penal Code § 7.02 ("Criminal Responsibility for Conduct of Another"). *Accord Dowdle v. State*, 11 S.W.3d 233, 238 n. 4 (Tex. Crim. App. 2000) (noting that a deadly-weapon finding would be authorized for a defendant when a co-conspirator used a deadly weapon during immediate flight and the defendant knew about it).

31. *See Ex parte Huskins*, 176 S.W.3d at 820 (finding that by accepting Huskins's guilty plea to the indictment, the judge necessarily determined that he used a deadly weapon in the commission of the offense).

law,[32] the Court treats the issue of this judgment's propriety as one that must be resolved by specific factual findings on remand. By remanding, the Court necessarily assumes the judge did not enter the judgment *nunc pro tunc* for a proper purpose or understand the law. Although it is content to suggest that placing a defendant on probation when a deadly-weapon finding would have precluded this punishment is some indication of the judge's intent to not make a deadly-weapon finding,[33] the Court does not find the entry of a deadly-weapon finding in the judgment *nunc pro tunc* equally informative. I suppose if the judge confesses that what purportedly was an attempt to fix a clerical error was, in truth, a surreptitious change in his judicial reasoning, the judgment *nunc pro tunc* would stand in a very different light. In spite of this possibility's long odds, the Court converts what was designed to be an efficient method to fix a clerical error into needless post-conviction litigation and expenditure of judicial resources.

Yeary, J., filed a dissenting opinion in which Keasler and Hervey, JJ., joined.

The Court declares that whether a *nunc pro tunc* judgment was appropriate here depends upon a question of fact and that "this issue of fact has not been conclusively resolved in the State's favor." Majority Opinion at 2. The question of fact is: Did the trial judge actually exercise its discretion to make a deadly weapon finding in this case (as the Court concedes he was authorized to do under the particular circumstances of this case)? The Court therefore remands the cause for further proceedings in the trial court, presumably to address this issue with Appellant's participation in the proceedings.

I would not remand the case because I agree with the State that to do so at this stage would be a "useless task."[1] The real question is not factual at all, in my view, but legal: Does the trial judge really have discretion to decline to make a deadly weapon finding under the circumstances? The Court holds that, in a bench trial, the trial judge has discretion to decline to make a deadly weapon finding, even when the use of a deadly weapon is an element of the charged offense. Majority Opinion at 4–6. But the case that the Court cites to support this proposition does not actually do so—at least not explicitly. *Id.* at 4–5. And my own research fails to uncover a case in which we have squarely addressed the question.[2]

32. *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980); *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971); *Smith v. State*, 15 S.W.3d 294, 299 (Tex. App.–Dallas 2000, no pet.).

33. *Ante,* at 6 n. 26.

1. *See Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012) (citing *Homan v. Hughes*, 708 S.W.2d 449, 454–55 (Tex. Crim. App. 1986)) (explaining that when it is apparent to the reviewing court that a judgment *nunc pro tunc* was properly entered under the circumstances, to nevertheless remand the cause for a hearing on the propriety of that order at which the appellant could be present would be a "useless task").

2. Indeed, one court of appeals has described the current state of the law with respect to whether a trial judge has discretion not to enter a deadly weapon finding, thus:

Having made a deadly-weapon finding ..., did the trial court have any discretion to not affirmatively enter that finding in the judgment of conviction? That question is ... difficult to resolve, if only because the court of criminal appeals appears to have answered it both ways.

*Roots v. State*, 419 S.W.3d 719, 725 (Tex. App.–Fort Worth 2013, pet. ref'd). As recently as four months ago, the Fourth Court of Appeals held that a trial judge has no such discretion. *Garcia v. State*, No. 04–14–00378–CR, 2015 WL 2255138, at *3 (Tex.

In *Hooks v. State*, 860 S.W.2d 110 (Tex. Crim. App. 1993), upon which the Court today relies, we took pains to distinguish between the "making" of an affirmative finding of a deadly weapon and the trial court's obligation, once such an affirmative finding has in fact been "made," to "enter" that affirmative finding into the judgment of the court.[3] *Id.* at 111–12. The statute makes the "entry" of the affirmative finding, once it has been "made," mandatory. Whether an affirmative finding is "made" that must then be entered into the judgment depends, of course, upon the evidence in the case and the fact-finder's response to that evidence.[4]

Presumably, the fact-finder should always "make" the affirmative finding any time it is satisfied that "it is shown" on the record that a deadly weapon was used or exhibited. Tex. Code Crim. Proc. art. 42.13 § 3g(a)(2). There are essentially three alternative scenarios when it comes to deadly weapon findings. First, if there is no evidence of a deadly weapon, then it has not been "shown" that a deadly weapon was used, and the fact-finder may *not* make the finding. Second, the evidence

may conflict with respect to whether a deadly weapon was used. In that event, it is up to the fact-finder to determine whether use of a deadly weapon has been "shown." If the fact-finder resolves the conflict by finding a deadly weapon *was* used, then an affirmative finding has been made and the statute clearly dictates that the trial court must then enter that affirmative finding in the judgment. The third scenario is the one we have here: the trial judge is the fact-finder and the defendant pleads guilty to an offense "as alleged" in an indictment that has alleged a deadly weapon. In this scenario, the use of a deadly weapon has definitively been "shown," and an affirmative finding must be entered in the trial court's judgment.[5] While the statute does not employ mandatory language at the "making" juncture, it does make it clear enough that such a finding *should* be "made" whenever "it is shown" that a deadly weapon was used. *Id.* And once the affirmative finding is "made," its entry into the judgment is mandatory. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988).[6]

App.–San Antonio, May 13, 2015, no pet. h.) (not designated for publication).

3. *See* Tex. Code Crim. Proc. art. 42.12, § 3g(a)(2) ("The provisions of Section 3 of this article [authorizing judge-imposed community supervision] do not apply ... to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.")

4. Whether the fact-finder is judge or jury depends upon which of those two entities has been designated the fact-finder at the particular stage of trial at which a deadly weapon

finding may be called for. *Fann v. State*, 702 S.W.2d 602, 604–05 (Tex. Crim. App. 1986) (op. on State's motion for reh'g). Like the Fort Worth Court of Appeals in *Roots*, 419 S.W.3d at 727, I see no principled reason to distinguish between trial judge and jury as fact-finder when it comes to discretion *not* to enter deadly-weapon affirmative finding once such a finding has been made. *See* text, *post*.

5. *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005) (when the indictment alleged that the defendant discharged a firearm, a deadly weapon *per se*, "[b]y properly admonishing applicant and then accepting his guilty plea to the indictment, the trial court *necessarily* determined that applicant used a deadly weapon in the commission of the offense") (emphasis added).

6. I agree with Judge Keasler that a deadly weapon finding was in fact made in this case. After *Crumpton v. State*, 301 S.W.3d 663 (Tex.

One consequence of an affirmative finding of the use or exhibition of a deadly weapon is that the trial judge is prohibited from imposing regular community supervision. Obviously, the Legislature did not want the trial judge to have any discretion to impose regular community supervision "when it is shown that a deadly weapon" was used. TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2). It makes no sense to construe the statute to cede that discretion right back to the trial judge through the back door by giving him the option to simply decline to make an affirmative finding *even when the record definitively establishes the use or exhibition of a deadly weapon.* It blatantly thwarts the legislative will to confer discretion on the trial judge to decline to make the affirmative finding even under circumstances in which—as here—it has unquestionably been "shown" on the record that a deadly weapon was in fact used.

The opinion that the Court cites today does not stand for the proposition that a trial judge has such discretion, either explicitly or by necessary implication. *Hooks* involved the question of the sufficiency of the "entry" of the affirmative finding into the judgment, not the "making" of the finding. We held that the judgment failed to contain the entry of an affirmative finding that was sufficiently specific to deprive the trial judge of his authority to impose regular probation. 860 S.W.2d at 112–14. Insofar as can be garnered from the opinion, nobody tried to reform the judgment—by mandamus or by *nunc pro tunc*—to make it reflect the fact that a deadly-weapon affirmative finding had been *made*, such that its entry into the

judgments was mandatory. The opinion did not address the question of whether a trial judge has the discretion to simply decline to *make* an affirmative finding of a deadly weapon even when "it is shown" and accepted by the fact-finder that a deadly weapon was used.

In *Hooks* itself, the Court seems to have expressly saved for another day the question whether the trial judge had the discretion to "simply decline[ ] to enter the ... affirmative finding in the judgment"—even though such a finding had apparently been "effectively made." 860 S.W.2d at 114 n. 7 and 111, respectively. The Court nonetheless says we decided the issue in *Hooks* by "necessary implication," citing our opinion in *Garza v. State,* 435 S.W.3d 258, 261 (Tex. Crim. App. 2014). Majority Opinion at 6. In *Garza,* we held that we had decided an issue by necessary implication in *Ex parte Maxwell,* 424 S.W.3d 66 (Tex. Crim. App. 2014). But *Maxwell* was a post-conviction application for writ of habeas corpus—an original proceeding in this Court—in which context we could not have granted relief without deciding every issue necessary to justify that result. *See Garza,* 435 S.W.3d at 262–63; *id.* at 263–64 (Price, J., concurring). *Hooks* was a petition for discretionary review, in which context we frequently address discrete issues without reference to whether the lower appellate court may have correctly decided *other* issues that were necessary to *its* final disposition of the case. The Court errs today to regard the question whether the trial court has discretion simply not to "make" an affirmative deadly weapon finding as settled by *Hooks.*[7]

Crim. App. 2009), it seems evident enough to me that the trial court actually made an affirmative finding that a deadly weapon was used in this case when it accepted Appellant's guilty plea. Failure to enter that affirmative finding in the judgment, as mandated when-

ever an affirmative finding is made, was clerical error. *Poe,* 751 S.W.2d at 876. And this is true regardless of whether the trial judge or a jury is the fact-finder that has made the affirmative finding. *Roots,* 419 S.W.3d at 727–28.

In my view, a trial judge as fact-finder lacks the discretion to simply decline to make an affirmative finding, at least so long as he is satisfied from the evidence that "it is shown" that a deadly weapon was used or exhibited.[8] Moreover, for reasons expressed here and in Judge Keasler's dissenting opinion today, I believe that what happened in this case did in fact constitute the making of an affirmative finding. Once an affirmative finding has been made, a trial court has no discretion but to enter it into the judgment. *Poe,* 751 S.W.2d at 876. Consequently, I see no extant fact issue under the circumstances that would justify the Court's remand today.[9] With these additional comments, I also respectfully dissent.

---

7. It also has not escaped my attention that the author of today's majority opinion relies today on this notion of a holding by necessary implication when, in *Garza* itself, she adamantly opposed it, explaining:

> [T]he Court says that '[a] careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary implication.' I disagree. ... Instead of assuming that we must have intentionally, but silently, resolved the procedural default issue in the convicted person's favor because that is the only way our disposition in *Maxwell* could have been correct, we should admit that we made a mistake, overlooking the issue that we should have addressed. * * * We should not compound such a mistake by proceeding under the legal fiction that our complete failure to address the issue was actually a silent disposition.

*Garza,* 435 S.W.3d at 271–72 (Keller, P.J., dissenting).

8. It might be argued that holding that a trial judge lacks the discretion whether to make and enter an affirmative finding of a deadly weapon will adversely impact guilty plea negotiations. The trial judge—so goes the argument—needs the flexibility to decline to make and enter deadly weapon findings. Otherwise, he will be in no position to facilitate a plea bargain by which a criminal defendant agrees to plead guilty in exchange for a judgment of conviction that will avoid the adverse consequences on probation and parole availability that statutorily attend deadly weapon affirmative findings. But, as important as plea bargaining may be to the efficient operation of the criminal justice system, a trial judge has no legitimate role to play in plea bargain negotiations between the parties. *State ex rel. Bryan v. McDonald,* 662 S.W.2d 5, 8–9 (Tex. Crim. App. 1983); *Perkins v. Third Court of Appeals,* 738 S.W.2d 276, 282 (Tex. Crim. App. 1987). His only function is to decide whether to accept the plea. TEX. CODE CRIM. PROC. art. 26.13(a)(2); *see also,* George E. Dix & John M. Schmolesky, 43 TEXAS PROCEDURE: CRIMINAL PRACTICE AND PROCEDURE § 40:68, at 587 (3rd ed. 2011) (*"Once the parties have arrived at an agreement,* it must be presented to the trial court in open court for its approval or rejection.") (Emphasis added). I am confident that the parties can find avenues of agreement that do not involve the trial judge's participation. If nothing else, they can bargain for conviction of some lesser-included offense that would not entail a deadly weapon finding. In any event, even a legitimate policy of judicial facilitation of plea bargaining between the parties could not justify thwarting the manifest prohibition embodied in Article 42.12, Section 3g(a)(2)—that trial judges simply may not grant regular community supervision whenever an affirmative deadly weapon finding is in fact made (and, perforce, entered into the judgment).

9. Moreover, I am not sure this case presents a fact issue even if the legal issue had been correctly decided in the manner that the Court implicitly decides it today. The Court finds the entry in the trial court's original judgment of "N/A" serves to raise a fact issue with respect to whether the trial judge really meant to exercise his discretion to decline to make a deadly weapon finding. *See* Majority Opinion at 7 ("The written entry in the judgment would seem to be an explicit determination that a deadly weapon finding was *not* being made, and it is more explicit than the trial judge's oral pronouncement of guilty 'as set forth in the indictment.' "). This seems to me to put the cart before the horse. The general rule is that, whenever there is a conflict between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls. *Ex parte Madding,* 70

## OPINION

Per curiam.

Having granted the State's motion for rehearing in this case, and having considered its merits, we now conclude that the State's motion was improvidently granted. We deny the State's motion for rehearing. No further motions for rehearing will be entertained.

Yeary, J., filed a dissenting opinion.

Meyers, J., did not participate.

Yeary, J., filed a dissenting opinion.

The primary bone of contention on original submission in this case was whether a trial court has the discretion *not* to make a deadly weapon finding (and therefore not to *enter* that deadly weapon finding into the written judgment) even though the record demonstrates that a deadly weapon was, in fact, used. The fulcrum of the debate was the proper understanding of this Court's opinion in *Hooks v. State*, 860 S.W.2d 110 (Tex. Crim. App. 1993). Does *Hooks* support the proposition that a trial court may choose *not* to make a deadly weapon finding even under circumstances

in which it has been conclusively "shown" that a deadly weapon was used? [1] Although we granted the State's motion for rehearing, today the Court declares that decision to have been improvident. I dissent.

## BACKGROUND

In two counts, Appellant was indicted for capital murder and for conspiracy to commit capital murder. After a few days of trial testimony, Appellant and the State reached a plea agreement. Pursuant to the agreement, the State waived the capital murder charge and Appellant pled guilty to the conspiracy charge, as set out in the indictment, in exchange for a 50–year prison sentence. The trial court found Appellant guilty of the offense with no oral pronouncement of a deadly weapon finding. The plea papers make no mention of a deadly weapon finding. The original judgment stated "N/A" in the space provided for "Finding on Deadly Weapon." Nevertheless, more than two months after the judgment was entered, the trial court signed a judgment *nunc pro tunc*. It changed the "Findings on Deadly Weapon" to say "Yes, a Firearm" and included a

---

S.W.3d 131, 135 (Tex. Crim. App. 2002). True, we have also said that a deadly weapon finding is not part of the sentence, and so a trial court does not even have to make an oral pronouncement of a deadly weapon finding to justify entering such an affirmative finding in the judgment. *Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) ("[A] trial court is not required to orally announce a deadly-weapon finding at sentencing if the allegation of use of a deadly weapon is clear from the face of the indictment.") Even so, I should think that the spirit of the general rule—that the thing itself governs over the mere memorialization of the thing—should nevertheless prevail. The written judgment is just the "the written declaration and embodiment of" what happened. *Madding, supra.* As Judge Keasler's dissenting opinion demonstrates, the record reveals that an affirmative finding of a deadly weapon was in fact made

in this case. The written judgment should have memorialized that actual finding; it should not now be cited as evidence that the finding was never in fact made.

1. *See* TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2) ("The provisions of Section 3 of this article [authorizing judge-imposed community supervision] do not apply ... to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.")

special finding that Appellant "used or exhibited a deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited." TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2).

On appeal, Appellant argued that the trial court erred in signing a *nunc pro tunc* order adding an affirmative deadly weapon finding to the judgment because the trial court's original notation of "N/A" on the original judgment was a judicial decision and not a clerical error. Appellant also argued that she never personally used or exhibited a deadly weapon, so the trial court could not find that she committed the offense with a deadly weapon. Appellant's third argument was that the trial court did not give her notice of the judgment *nunc pro tunc*, which denied her right to due process. The court of appeals affirmed the judgment without addressing this third issue concerning notice of the *nunc pro tunc*.[2]

On original submission, this Court agreed nearly unanimously that the record of this case would *support* a deadly weapon finding.[3] Only one judge expressed a contrary view.[4] A disagreement existed within the Court, however, concerning whether the trial court in fact had actually *made* such an affirmative finding. A bare majority of the Court determined that there was an outstanding issue of fact with respect to whether the trial court had originally exercised (what the majority deemed to be) its discretion to decline to make a deadly weapon finding.[5] Consequently, the Court remanded the cause for a formal *nunc pro tunc* hearing.

In my view, the trial court made an unequivocal deadly weapon finding and, having made it, had no discretion but to enter it into the written judgment. Having failed to do so originally, the trial court was authorized to enter it in a judgment *nunc pro tunc*. I would affirm the judgment of the court of appeals.

2. *Guthrie–Nail v. State*, No. 05–13–00016–CR, 2014 WL 61037 (Tex. App.–Dallas Jan. 8, 2014)(not designated for publication).

3. Eight judges on original submission took the view that the record would *support* the making of an affirmative deadly weapon finding in this case, the only disagreement being whether the trial court actually *made* one. *See Guthrie–Nail v. State*, No. PD–0125–14, 506 S.W.3d 1, 3, 2015 WL 5449642, at *1 n.3 (Tex. Crim. App. Sept. 16, 2015) ("Because the conspiracy indictment alleged the overt act of shooting the victim 'with a firearm causing his death' and also alleged that the conspirators intended to commit capital murder, the indictment would support a finding that a deadly weapon was used—and that appellant knew that a deadly weapon would be used—in the course of the conspiracy offense."); *id.* at 11–13, at *9 (Keasler, J., joined by Hervey and Yeary, JJ., dissenting) (arguing that a deadly weapon was not only supported but actually made); *id.* at 16, at *12 n.6 (Yeary, J. joined by Keasler and Hervey, JJ., dissenting) ("I agree with Judge

Keasler that a deadly weapon finding was in fact made in this case.").

4. 506 S.W.3d at 10, 2015 WL 5449642, at *8 (Meyers, J., dissenting) ("[A] deadly-weapon finding is not even allowed in a conspiracy case such as this.").

5. Three judges disputed the existence of such a fact issue. Those judges believed that the trial court had the discretion to decline to make a deadly weapon finding any time "it is shown" on the record that a deadly weapon was used. Believing that the record in fact did show such a deadly weapon finding, those judges found the issue to be a purely legal one, the answer to which was clear. Accordingly, those three judges considered any remand to be a "useless task" in contemplation of *Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012). *See* 506 S.W.3d at 13–14, 2015 WL 5449642, at *10 (Keasler, J., joined by Hervey and Yeary, JJ., dissenting); *id.* at 15, n.1 & 17–19, *11 n.1 & *13 (Yeary, J., joined by Keasler and Hervey, JJ., dissenting). That view did not carry the day.

## THE DEADLY WEAPON FINDING

### The Pleading and the Proof

Appellant pled guilty to the commission of the offense of conspiracy to commit capital murder as alleged in Count II of the indictment, and the trial court accepted that plea. Count II of the indictment alleged that Appellant did,

with intent that capital murder, a felony, be committed, agree with Mark Lyle Bell and Thomas Edward Grace, that they or one of them would engage in conduct that would constitute the offense, to wit: enter the habitation of Craig Nail and cause the death of Craig Nail, and Mark Lyle Bell performed an overt act in pursuance of the agreement, to wit: entered the habitation of Craig Nail and *shot Craig Nail with a firearm causing his death.*

(Emphasis added.) In her written judicial confession, Appellant "admit[ted] to committing the offense of Conspiracy to Commit Capital Murder exactly as charged ... in Count II of the charging instrument." Thus, she confessed to agreeing to commit capital murder, that the agreement embraced, as its object offense, entering the habitation of her husband and causing his death, and that, as the overt act necessary to complete the conspiracy offense, one of the co-conspirators actually *did* enter that habitation and *did* kill her husband, using a firearm to do so. Thus, the object offense and the overt act were, at least as alleged in Count II of this indictment, one and the same.

### Was a Deadly Weapon Finding Made as a Matter of Law?

An affirmative deadly weapon finding is "made" when the indictment explicitly alleges that the defendant used or exhibited a deadly weapon (including a firearm, which is a deadly weapon *per se*) and the jury's verdict specifically finds the defendant guilty as charged in the indictment. *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). Similarly, we have held that, when a trial court accepts a guilty plea from a defendant who has pled guilty to an indictment that explicitly charges the use or exhibition of a deadly weapon (or a firearm), this constitutes a determination by the trial court that a deadly weapon was used or exhibited. *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005) ("when applicant plead guilty to deadly conduct ... he confessed that (1) he was the same person named in the indictment, and (2) that he committed the offense charged in the indictment. By properly admonishing applicant and then accepting his guilty plea to the indictment, the trial court necessarily determined that applicant used a deadly weapon in the commission of the offense."). Count II of the indictment in this case *did* explicitly allege the use or exhibition of a firearm. It did *not* allege, however, that Appellant was the one who used or exhibited it, but that one of her co-conspirators did.

Criminal conspiracy is an inchoate offense.[6] A person commits the offense of criminal conspiracy when he "agrees" with one or more other persons to commit a felony and "he or one or more of them performs an overt act in pursuance of the agreement." TEX. PENAL CODE § 15.02(a)(2). Thus, although conspiracy is an inchoate offense, its inchoate nature does not mean that no conduct is required in order to commit it. If a defendant pleads guilty to an indictment that explicitly charges that he personally used or exhibited a deadly

---

6. An "inchoate offense" is "[a] step toward the commission of another crime, the step in itself being serious enough to merit punishment." BLACK'S LAW DICTIONARY 1250 (10th ed. 2014).

weapon in the course of committing the required overt act, there is no reason to exempt that defendant from an affirmative deadly weapon finding.[7] But what if, as here, the defendant pleads guilty to an indictment that alleges it was not he who used or exhibited a deadly weapon, but one of his co-conspirators? Can a conspirator who agrees to commit the object offense but does not commit the overt act be held criminally responsible for a co-conspirator's use or exhibition of a deadly weapon? I think so—at least in some circumstances.

Parties, for example, may be found to have used or exhibited deadly weapons. Article 42.12, Section 3g(a)(2) of the Code of Criminal Procedure provides that a deadly weapon finding should be made "when it is shown ... that the defendant ... was a party to the offense and knew that a deadly weapon would be used or exhibited." TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2).[8] To justify an affirmative finding under this provision, two facts must be "shown" on the record: 1) that Appellant was a "party to the offense," and 2) that she "knew that" a deadly weapon would be used. Were the allegations in Count II of the indictment in this case of such a nature that the trial court's acceptance of Appellant's guilty plea established both facts? In my view, the answer to that question is yes.

**Appellant was a Party:** To incur deadly weapon liability as a party under Article 42.12, Section 3g(a)(2), it must be "shown" that the defendant was a "party" to "the offense." To find a defendant convicted of conspiracy to be a "party" to that offense is a fairly straightforward proposition. Section 7.01(a) of the Penal Code makes a defendant "criminally responsible *as a party* to an offense" under three circumstances: either "the offense is committed by his own conduct," it is committed "by the conduct of another for which he is criminally responsible," or it is committed "by both" his own conduct and the conduct of another for which he is criminally responsible. TEX. PENAL CODE § 7.01(a) (emphasis added). A defendant who both personally agrees to commit an offense and also personally commits the overt act necessary to complete the offense of conspiracy is then, obviously, a "party" to that offense by virtue of his own conduct alone. But if he agrees to commit a felony and one of his co-conspirators commits the overt act necessary to complete the conspiracy offense, then he is a "party" to that offense as well, "both" by virtue of his own conduct in agreeing *and* by virtue of the conduct of his co-conspirator in committing the overt act. His act of agreeing, together with his co-conspirator's act in committing

7. *Cf., Whatley v. State*, 946 S.W.2d 73, 76 (Tex. Crim. App. 1997) (discussing deadly weapon findings in the context of another inchoate offense—solicitation—and explaining: "Certainly, if a defendant pointed a gun at another person and commanded that person to engage in conduct constituting a capital or first degree felony, that defendant would have 'used or exhibited' a deadly weapon during the offense of solicitation. * * * Hence, merely exhibiting a deadly weapon to an accomplice during a solicitation transaction may be sufficient to support a deadly weapon finding—especially where, as in the present case, the weapons were deadly weapons per se.") (footnote omitted).

8. The statute did not originally provide for party liability for another's use or exhibition of a deadly weapon. Acts 1977, 65th Leg., ch. 347, § 1, p. 926, eff. Aug. 29, 1977; *Travelstead v. State*, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985). But it was amended in 1991 to read as quoted in the text. Acts 1991, 72nd Leg., ch. 541, p. 1876, eff. Sept. 1, 1991. As it currently reads, the provision still does not explicitly speak to whether a *conspirator* may be found vicariously to have used or exhibited a deadly weapon when his co-conspirator used or exhibited a deadly weapon in the course of committing the offense that was the object of the conspiracy or while committing an overt act pursuant to the conspiracy.

the overt act, combine to make him "criminally responsible" for the offense of criminal conspiracy under Section 15.02(a) of the Penal Code. This is so because the conspiracy offense itself assigns criminal responsibility for the conduct of another when it makes it an offense for one person to agree to commit a felony while another person, a co-conspirator ("he *or one or more of them*"), commits the overt act that completes the offense. TEX. PENAL CODE § 15.02(a)(2).[9]

Count II of the indictment alleged: that Appellant personally agreed to commit a felony offense; that the agreement expressly contemplated that her husband would be murdered; and that one of her co-defendants committed the object offense as the overt act in pursuance of that agreement. Appellant confessed to the truth of those allegations and pled guilty to Count II, and the trial court accepted her plea. I can only conclude from this that it has been "shown" on the record that Appellant was a "party" to the conspiracy to murder her husband.

**Appellant Knew a Deadly Weapon Would be Used:** Was it likewise "shown" on the record that Appellant necessarily "knew that" her co-conspirator would use a deadly weapon to perpetrate the object-offense/overt-act to which she was shown to be a party?[10] I conclude that, because the object-offense/overt-act in this conspiracy case was a homicide, Appellant must necessarily have contemplated that a deadly weapon would be used. It almost goes without saying that Appellant knew that a deadly weapon would be used in carrying out the murder of her husband. When, as in this case, the alleged overt act is also the agreed-upon object offense, and that object-offense/overt-act is a *homicide*, then every co-conspirator has essentially agreed, and is aware, that a deadly weapon will be used.

9. Contrast the engaging in organized criminal activity statute, which requires the defendant himself to be among those who commit the overt act necessary to "conspire to commit" an offense for purposes of that statute. *See* TEX. PENAL CODE § 71.01(b) (a person "conspires to commit" an offense for purposes of Chapter 71 of the Penal Code when that person "agrees with one or more persons" to commit an offense "and that person *and* one or more of them perform an overt act in pursuance of the agreement"). *See Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988) ("A person may be guilty of criminal conspiracy [as opposed to engaging in organized criminal activity] by doing nothing more than agreeing to participate in the conspiracy, as long as another conspirator commits some overt act in furtherance of the conspiracy.").

It is true that Section 7.02(a) of the Penal Code generally defines the circumstances under which "[a] person is criminally responsible for an offense committed by the conduct of another[.]" TEX. PENAL CODE § 7.02(a). But nothing about the language of Section 7.02 purports to exhaust the field of possible circumstances under which a person might be criminally responsible for the conduct of another. Section 15.02(a)(2) of the Penal Code presents a plain and specific example of how a person may be "criminally responsible" for the conduct of another in satisfaction of at least one element of the offense of criminal conspiracy: He may be criminally responsible for the overt act of one of his co-conspirators. To the extent that it may be said that Section 7.02(a) conflicts with Section 15.02(a)(2), in that the latter would assign criminal responsibility where the former would not, then the more specific provision must control. *See Shipp v. State*, 331 S.W.3d 433, 438 n.29 (Tex. Crim. App. 2011) (plurality opinion) (Section 311.026 of the Code Construction Act applies to interpretations of the Penal Code); TEX. GOV'T CODE § 311.026(b) (in the event of irreconcilable conflict between general and specific statutory provisions, the latter controls).

10. It is not a defense to criminal conspiracy that "the object offense was actually committed." TEX. PENAL CODE § 15.02(c)(5). Thus, there is nothing to prevent the State from alleging that the overt act was the commission of the object felony.

This conclusion follows from our holding in *Crumpton v. State*, 301 S.W.3d 663 (Tex. Crim. App. 2009). There we observed:

> If a deadly weapon is anything that is capable of causing death or serious bodily injury, and the indictment alleges that the defendant caused death or serious bodily injury, and the jury finds the defendant guilty as charged in the indictment, the verdict is necessarily a finding that a deadly weapon was used.

*Id.* at 665. Even more to the point, we also held that "a verdict of homicide necessarily is a finding that a deadly weapon was used." *Id.* at 664. "Having found that the defendant was guilty of homicide," we explained, "the jury necessarily found that the defendant used something that in the manner of its use was capable of causing— and did cause—death." *Id.*

Beginning with the premise that a jury must necessarily conclude from the fact that a homicide has been committed that a deadly weapon was used, it stands to reason that a co-conspirator to a homicide must necessarily anticipate that a deadly weapon will be used in the commission of that homicide. This is true because a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death[,]" TEX. PENAL CODE § 1.07(a)(17)(B), and if causing death was the purpose of the conspiracy, then the conspirators must have contemplated that something would be used to cause the death. This will not be true for every overt act, of course. But when the overt act is the same as the object offense, and when the object offense is a homicide, it necessarily follows.

For these reasons, I conclude that, by confessing to the offense as pled in the indictment, Appellant supplied conclusive proof that she was a party to the use of a deadly weapon, knowing that a deadly weapon would in fact be used. By accepting her guilty plea in the wake of that confession, the trial court necessarily made a deadly weapon finding. In short, it has conclusively been "shown" on this record that Appellant used a deadly weapon, and the trial court had no choice but to "enter" it.[11] TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2). Under these circumstances, the judgment *nunc pro tunc* was appropriate. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988). The Court errs today to conclude otherwise.

## NO NEED FOR A REMAND

The trial court necessarily made a deadly weapon finding. That the trial court itself understood that it had done so is supported by the notation of a deadly weapon finding in its computerized docket sheet. Although the original judgment that was generated following Appellant's guilty plea contained the notation of "N/A" in the space provided for "Finding on Deadly Weapon," that notation constitutes nothing more than an erroneous memorialization with respect to the applicability of a deadly weapon issue. The deadly weapon issue manifestly *was* "applicable" in this case. The "N/A" notation certainly does not constitute evidence that, contrary to the other

11. It might be argued that Appellant may not have pled guilty had she understood that it would automatically result in a deadly weapon finding, with all of its attendant disadvantages. Suffice it to say that we have no way of knowing on the present record whether Appellant understood or not, and the voluntariness of her plea is not a question that is presently before us. In any event, with a little bit of creative lawyering, the parties could have worked out a plea bargain that would have avoided the deadly weapon finding. For example, Appellant could have agreed to waive indictment and plead guilty to an information that changed the allegation of the overt act to something other than the object offense that did not involve the use of a firearm.

indicators in the case, the trial court actually *made* a determination that Appellant did *not* use or exhibit a deadly weapon. Moreover, there is nothing in the record to suggest that the trial court's order *nunc pro tunc* was anything other than a proper correction of a clerical error in the original judgment—to show that the deadly weapon issue *was* applicable and that such a finding *had been made* and was required to be entered into the judgment.

Here, as in *Poe*, "[t]he trial judge did not err in correcting this error by entering a judgment nunc pro tunc which properly reflected what the trier of fact had determined." 751 S.W.2d at 876. Under these circumstances, there is no need to remand the cause for whatever further clarification a formal *nunc pro tunc* hearing might afford. Remand for a *nunc pro tunc* hearing is not necessary when it would be a useless act. *Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012).

### CONCLUSION

The judgment of the court of appeals ought to be affirmed. I respectfully dissent to the dismissal of State's motion for rehearing as improvidently granted.