

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0125-14

**VERA ELIZABETH GUTHRIE-NAIL, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S MOTION FOR REHEARING FROM APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIFTH COURT OF APPEALS COLLIN COUNTY

**YEARY, J., filed a dissenting opinion.**

### DISSENTING OPINION ON REHEARING

The primary bone of contention on original submission in this case was whether a trial court has the discretion *not* to make a deadly weapon finding (and therefore not to *enter* that deadly weapon finding into the written judgment) even though the record demonstrates that a deadly weapon was, in fact, used. The fulcrum of the debate was the proper understanding of this Court's opinion in *Hooks v. State*, 860 S.W.3d 110 (Tex. Crim. App. 1993). Does

*Hooks* support the proposition that a trial court may choose *not* to make a deadly weapon finding even under circumstances in which it has been conclusively "shown" that a deadly weapon was used?[1] Although we granted the State's motion for rehearing, today the Court declares that decision to have been improvident. I dissent.

## BACKGROUND

In two counts, Appellant was indicted for capital murder and for conspiracy to commit capital murder. After a few days of trial testimony, Appellant and the State reached a plea agreement. Pursuant to the agreement, the State waived the capital murder charge and Appellant pled guilty to the conspiracy charge, as set out in the indictment, in exchange for a 50-year prison sentence. The trial court found Appellant guilty of the offense with no oral pronouncement of a deadly weapon finding. The plea papers make no mention of a deadly weapon finding. The original judgment stated "N/A" in the space provided for "Finding on Deadly Weapon." Nevertheless, more than two months after the judgment was entered, the trial court signed a judgment *nunc pro tunc*. It changed the "Findings on Deadly Weapon" to say "Yes, a Firearm" and included a special finding that Appellant "used or exhibited a deadly weapon or was a party to the offense and knew that a deadly weapon would be used

---

[1] *See* TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2) ("The provisions of Section 3 of this article [authorizing judge-imposed community supervision] do not apply . . . to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.")

or exhibited." TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2).

On appeal, Appellant argued that the trial court erred in signing a *nunc pro tunc* order adding an affirmative deadly weapon finding to the judgment because the trial court's original notation of "N/A" on the original judgment was a judicial decision and not a clerical error. Appellant also argued that she never personally used or exhibited a deadly weapon, so the trial court could not find that she committed the offense with a deadly weapon. Appellant's third argument was that the trial court did not give her notice of the judgment *nunc pro tunc*, which denied her right to due process. The court of appeals affirmed the judgment without addressing this third issue concerning notice of the *nunc pro tunc*.[2]

On original submission, this Court agreed nearly unanimously that the record of this case would *support* a deadly weapon finding.[3] Only one judge expressed a contrary view.[4]

---

[2] *Guthrie-Nail v. State*, No. 05-13-00016-CR, 2014 WL 61037 (Tex. App.—Dallas Jan. 8, 2014)(not designated for publication).

[3] Eight judges on original submission took the view that the record would *support* the making of an affirmative deadly weapon finding in this case, the only disagreement being whether the trial court actually *made* one. *See Guthrie-Nail v. State*, No. PD-0125-14, 2015 WL 5449642, at *1 n.3 (Tex. Crim. App. Sept. 16, 2015) ("Because the conspiracy indictment alleged the overt act of shooting the victim 'with a firearm causing his death' and also alleged that the conspirators intended to commit capital murder, the indictment would support a finding that a deadly weapon was used—and that appellant knew that a deadly weapon would be used—in the course of the conspiracy offense."); *id*. at *9 (Keasler, J., joined by Hervey and Yeary, JJ., dissenting) (arguing that a deadly weapon was not only supported but actually made); *id*. at 12 n.6 (Yeary, J. joined by Keasler and Hervey, JJ., dissenting) ("I agree with Judge Keasler that a deadly weapon finding was in fact made in this case.").

[4] 2015 WL 5449642, at *8 (Meyers, J., dissenting) ("[A] deadly-weapon finding is not even allowed in a conspiracy case such as this.").

A disagreement existed within the Court, however, concerning whether the trial court in fact had actually *made* such an affirmative finding. A bare majority of the Court determined that there was an outstanding issue of fact with respect to whether the trial court had originally exercised (what the majority deemed to be) its discretion to decline to make a deadly weapon finding.[5] Consequently, the Court remanded the cause for a formal *nunc pro tunc* hearing.

In my view, the trial court made an unequivocal deadly weapon finding and, having made it, had no discretion but to enter it into the written judgment. Having failed to do so originally, the trial court was authorized to enter it in a judgment *nunc pro tunc*. I would affirm the judgment of the court of appeals.

## THE DEADLY WEAPON FINDING

### The Pleading and the Proof

Appellant pled guilty to the commission of the offense of conspiracy to commit capital murder as alleged in Count II of the indictment, and the trial court accepted that plea. Count II of the indictment alleged that Appellant did,

> with intent that capital murder, a felony, be committed, agree with Mark Lyle Bell and Thomas Edward Grace, that they or one of them would engage in

---

[5] Three judges disputed the existence of such a fact issue. Those judges believed that the trial court had the discretion to decline to make a deadly weapon finding any time "it is shown" on the record that a deadly weapon was used. Believing that the record in fact did show such a deadly weapon finding, those judges found the issue to be a purely legal one, the answer to which was clear. Accordingly, those three judges considered any remand to be a "useless task" in contemplation of *Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012). *See* 2015 WL 5449642, at *10 (Keasler, J., joined by Hervey and Yeary, JJ., dissenting); *id*. at *11 n.1 & *13 (Yeary, J., joined by Keasler and Hervey, JJ., dissenting). That view did not carry the day.

> conduct that would constitute the offense, to wit: enter the habitation of Craig Nail and cause the death of Craig Nail, and Mark Lyle Bell performed an overt act in pursuance of the agreement, to wit: entered the habitation of Craig Nail and *shot Craig Nail with a firearm causing his death*.

(Emphasis added.) In her written judicial confession, Appellant "admit[ted] to committing the offense of Conspiracy to Commit Capital Murder exactly as charged . . . in Count II of the charging instrument." Thus, she confessed to agreeing to commit capital murder, that the agreement embraced, as its object offense, entering the habitation of her husband and causing his death, and that, as the overt act necessary to complete the conspiracy offense, one of the co-conspirators actually *did* enter that habitation and *did* kill her husband, using a firearm to do so. Thus, the object offense and the overt act were, at least as alleged in Count II of this indictment, one and the same.

### Was a Deadly Weapon Finding Made as a Matter of Law?

An affirmative deadly weapon finding is "made" when the indictment explicitly alleges that the defendant used or exhibited a deadly weapon (including a firearm, which is a deadly weapon *per se*) and the jury's verdict specifically finds the defendant guilty as charged in the indictment. *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). Similarly, we have held that, when a trial court accepts a guilty plea from a defendant who has pled guilty to an indictment that explicitly charges the use or exhibition of a deadly weapon (or a firearm), this constitutes a determination by the trial court that a deadly weapon was used or exhibited. *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005)

("when applicant plead guilty to deadly conduct . . . he confessed that (1) he was the same person named in the indictment, and (2) that he committed the offense charged in the indictment. By properly admonishing applicant and then accepting his guilty plea to the indictment, the trial court necessarily determined that applicant used a deadly weapon in the commission of the offense."). Count II of the indictment in this case *did* explicitly allege the use or exhibition of a firearm. It did *not* allege, however, that Appellant was the one who used or exhibited it, but that one of her co-conspirators did.

Criminal conspiracy is an inchoate offense.[6] A person commits the offense of criminal conspiracy when he "agrees" with one or more other persons to commit a felony and "he or one or more of them performs an overt act in pursuance of the agreement." TEX. PENAL CODE § 15.02(a)(2). Thus, although conspiracy is an inchoate offense, its inchoate nature does not mean that no conduct is required in order to commit it. If a defendant pleads guilty to an indictment that explicitly charges that he personally used or exhibited a deadly weapon in the course of committing the required overt act, there is no reason to exempt that defendant from an affirmative deadly weapon finding.[7] But what if, as here, the defendant pleads guilty to

---

[6] An "inchoate offense" is "[a] step toward the commission of another crime, the step in itself being serious enough to merit punishment." BLACK'S LAW DICTIONARY 1250 (10th ed. 2014).

[7] *Cf., Whatley*, 946 S.W.2d 73, 76 (Tex. Crim. App. 1997) (discussing deadly weapon findings in the context of another inchoate offense—solicitation—and explaining: "Certainly, if a defendant pointed a gun at another person and commanded that person to engage in conduct constituting a capital or first degree felony, that defendant would have 'used or exhibited' a deadly weapon during the offense of solicitation. * * * Hence, merely exhibiting a deadly weapon to an accomplice during a solicitation transaction may be sufficient to support a deadly weapon finding—especially where, as in the present case, the weapons were deadly weapons per se.")

an indictment that alleges it was not he who used or exhibited a deadly weapon, but one of his co-conspirators? Can a conspirator who agrees to commit the object offense but does not commit the overt act be held criminally responsible for a co-conspirator's use or exhibition of a deadly weapon? I think so—at least in some circumstances.

Parties, for example, may be found to have used or exhibited deadly weapons. Article 42.12, Section 3g(a)(2) of the Code of Criminal Procedure provides that a deadly weapon finding should be made "when it is shown . . . that the defendant . . . was a party to the offense and knew that a deadly weapon would be used or exhibited." TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2).[8] To justify an affirmative finding under this provision, two facts must be "shown" on the record: 1) that Appellant was a "party to the offense," and 2) that she "knew that" a deadly weapon would be used. Were the allegations in Count II of the indictment in this case of such a nature that the trial court's acceptance of Appellant's guilty plea established both facts? In my view, the answer to that question is yes.

**Appellant was a Party:** To incur deadly weapon liability as a party under Article 42.12, Section 3g(a)(2), it must be "shown" that the defendant was a "party" to "the offense."

_____

(footnote omitted).

[8] The statute did not originally provide for party liability for another's use or exhibition of a deadly weapon. Acts 1977, 65th Leg., ch. 347, § 1, p. 926, eff. Aug. 29, 1977; *Travelstead v. State*, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985). But it was amended in 1991 to read as quoted in the text. Acts 1991, 72nd Leg., ch. 541, p. 1876, eff. Sept. 1, 1991. As it currently reads, the provision still does not explicitly speak to whether a *conspirator* may be found vicariously to have used or exhibited a deadly weapon when his co-conspirator used or exhibited a deadly weapon in the course of committing the offense that was the object of the conspiracy or while committing an overt act pursuant to the conspiracy.

To find a defendant convicted of conspiracy to be a "party" to that offense is a fairly straightforward proposition. Section 7.01(a) of the Penal Code makes a defendant "criminally responsible *as a party* to an offense" under three circumstances: either "the offense is committed by his own conduct," it is committed "by the conduct of another for which he is criminally responsible," or it is committed "by both" his own conduct and the conduct of another for which he is criminally responsible. TEX. PENAL CODE § 7.01(a) (emphasis added). A defendant who both personally agrees to commit an offense and also personally commits the overt act necessary to complete the offense of conspiracy is then, obviously, a "party" to that offense by virtue of his own conduct alone. But if he agrees to commit a felony and one of his co-conspirators commits the overt act necessary to complete the conspiracy offense, then he is a "party" to that offense as well, "both" by virtue of his own conduct in agreeing *and* by virtue of the conduct of his co-conspirator in committing the overt act. His act of agreeing, together with his co-conspirator's act in committing the overt act, combine to make him "criminally responsible" for the offense of criminal conspiracy under Section 15.02(a) of the Penal Code. This is so because the conspiracy offense itself assigns criminal responsibility for the conduct of another when it makes it an offense for one person to agree to commit a felony while another person, a co-conspirator ("he *or one or more of them*"), commits the overt act that completes the offense. TEX. PENAL CODE § 15.02(a)(2).[9]

---

[9] Contrast the engaging in organized criminal activity statute, which requires the defendant himself to be among those who commit the overt act necessary to "conspire to commit" an offense

Count II of the indictment alleged: that Appellant personally agreed to commit a felony offense; that the agreement expressly contemplated that her husband would be murdered; and that one of her co-defendants committed the object offense as the overt act in pursuance of that agreement. Appellant confessed to the truth of those allegations and pled guilty to Count II, and the trial court accepted her plea. I can only conclude from this that it has been "shown" on the record that Appellant was a "party" to the conspiracy to murder her husband.

**Appellant Knew a Deadly Weapon Would be Used:** Was it likewise "shown" on the record that Appellant necessarily "knew that" her co-conspirator would use a deadly

---

for purposes of that statute. *See* TEX. PENAL CODE § 71.01(b) (a person "conspires to commit" an offense for purposes of Chapter 71 of the Penal Code when that person "agrees with one or more persons" to commit an offense "and that person *and* one or more of them perform an overt act in pursuance of the agreement"). *See Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988) ("A person may be guilty of criminal conspiracy [as opposed to engaging in organized criminal activity] by doing nothing more than agreeing to participate in the conspiracy, as long as another conspirator commits some overt act in furtherance of the conspiracy.").

It is true that Section 7.02(a) of the Penal Code generally defines the circumstances under which "[a] person is criminally responsible for an offense committed by the conduct of another[.]" TEX. PENAL CODE § 7.02(a). But nothing about the language of Section 7.02 purports to exhaust the field of possible circumstances under which a person might be criminally responsible for the conduct of another. Section 15.02(a)(2) of the Penal Code presents a plain and specific example of how a person may be "criminally responsible" for the conduct of another in satisfaction of at least one element of the offense of criminal conspiracy: He may be criminally responsible for the overt act of one of his co-conspirators. To the extent that it may be said that Section 7.02(a) conflicts with Section 15.02(a)(2), in that the latter would assign criminal responsibility where the former would not, then the more specific provision must control. *See Shipp v. State*, 331 S.W.3d 433, 438 n.29 (Tex. Crim. App. 2011) (plurality opinion) (Section 311.026 of the Code Construction Act applies to interpretations of the Penal Code); TEX. GOV'T CODE § 311.026(b) (in the event of irreconcilable conflict between general and specific statutory provisions, the latter controls).

weapon to perpetrate the object-offense/overt-act to which she was shown to be a party?[10]

I conclude that, because the object-offense/overt-act in this conspiracy case was a homicide, Appellant must necessarily have contemplated that a deadly weapon would be used. It almost goes without saying that Appellant knew that a deadly weapon would be used in carrying out the murder of her husband. When, as in this case, the alleged overt act is also the agreed-upon object offense, and that object-offense/overt-act is a *homicide*, then every co-conspirator has essentially agreed, and is aware, that a deadly weapon will be used.

This conclusion follows from our holding in *Crumpton v. State*, 301 S.W.3d 663 (Tex. Crim. App. 2009). There we observed:

> If a deadly weapon is anything that is capable of causing death or serious bodily injury, and the indictment alleges that the defendant caused death or serious bodily injury, and the jury finds the defendant guilty as charged in the indictment, the verdict is necessarily a finding that a deadly weapon was used.

*Id*. at 665. Even more to the point, we also held that "a verdict of homicide necessarily is a finding that a deadly weapon was used." *Id*. at 664. "Having found that the defendant was guilty of homicide," we explained, "the jury necessarily found that the defendant used something that in the manner of its use was capable of causing—and did cause—death." *Id*.

Beginning with the premise that a jury must necessarily conclude from the fact that a homicide has been committed that a deadly weapon was used, it stands to reason that a co-

---

[10] It is not a defense to criminal conspiracy that "the object offense was actually committed." TEX. PENAL CODE § 15.02(c)(5). Thus, there is nothing to prevent the State from alleging that the overt act was the commission of the object felony.

conspirator to a homicide must necessarily anticipate that a deadly weapon will be used in the commission of that homicide. This is true because a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death[,]" TEX. PENAL CODE § 1.07(a)(17)(B), and if causing death was the purpose of the conspiracy, then the conspirators must have contemplated that something would be used to cause the death. This will not be true for every overt act, of course. But when the overt act is the same as the object offense, and when the object offense is a homicide, it necessarily follows.

For these reasons, I conclude that, by confessing to the offense as pled in the indictment, Appellant supplied conclusive proof that she was a party to the use of a deadly weapon, knowing that a deadly weapon would in fact be used. By accepting her guilty plea in the wake of that confession, the trial court necessarily made a deadly weapon finding. In short, it has conclusively been "shown" on this record that Appellant used a deadly weapon, and the trial court had no choice but to "enter" it.[11] TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2). Under these circumstances, the judgment *nunc pro tunc* was appropriate. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988). The Court errs today to conclude otherwise.

---

[11] It might be argued that Appellant may not have pled guilty had she understood that it would automatically result in a deadly weapon finding, with all of its attendant disadvantages. Suffice it to say that we have no way of knowing on the present record whether Appellant understood or not, and the voluntariness of her plea is not a question that is presently before us. In any event, with a little bit of creative lawyering, the parties could have worked out a plea bargain that would have avoided the deadly weapon finding. For example, Appellant could have agreed to waive indictment and plead guilty to an information that changed the allegation of the overt act to something other than the object offense that did not involve the use of a firearm.

## NO NEED FOR A REMAND

The trial court necessarily made a deadly weapon finding. That the trial court itself understood that it had done so is supported by the notation of a deadly weapon finding in its computerized docket sheet. Although the original judgment that was generated following Appellant's guilty plea contained the notation of "N/A" in the space provided for "Finding on Deadly Weapon," that notation constitutes nothing more than an erroneous memorialization with respect to the applicability of a deadly weapon issue. The deadly weapon issue manifestly *was* "applicable" in this case. The "N/A" notation certainly does not constitute evidence that, contrary to the other indicators in the case, the trial court actually *made* a determination that Appellant did *not* use or exhibit a deadly weapon. Moreover, there is nothing in the record to suggest that the trial court's order *nunc pro tunc* was anything other than a proper correction of a clerical error in the original judgment—to show that the deadly weapon issue *was* applicable and that such a finding *had been made* and was required to be entered into the judgment.

Here, as in *Poe*, "[t]he trial judge did not err in correcting this error by entering a judgment nunc pro tunc which properly reflected what the trier of fact had determined." 751 S.W.2d at 876. Under these circumstances, there is no need to remand the cause for whatever further clarification a formal *nunc pro tunc* hearing might afford. Remand for a *nunc pro tunc* hearing is not necessary when it would be a useless act. *Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012).

## CONCLUSION

The judgment of the court of appeals ought to be affirmed. I respectfully dissent to the dismissal of State's motion for rehearing as improvidently granted.

FILED:      November 23, 2016
PUBLISH