**Opinion filed December 21, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00280-CR

_____

## DOROTHY JEAN MORENO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 13287-D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Dorothy Jean Moreno, of aggravated assault with a deadly weapon, a second-degree felony, and assessed her punishment at confinement for a term of three years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.02(a), (b) (West Supp. 2023). In her sole issue on appeal, Appellant challenges the sufficiency of the evidence supporting her conviction. Appellant requests that we render an acquittal

of the offense of aggravated assault and convict her of the lesser-included offense of misdemeanor assault. We modify and affirm.

*Background Facts*

Sarah Wallis arrived at Guitars and Cadillacs, a bar in Abilene, around 12:30 a.m., "in time for basically last call." Wallis had finished her shift at work and joined Brienna Thorndyke, Raven Contreras, and Ariana Munoz for a drink. Wallis noticed that Derian Villeda was also at Guitars and Cadillacs. Derian shares a child with Ariana's sister, Alexis Munoz. Alexis and Derian had recently separated and were involved in a custody dispute at the time of the incident.

Wallis recalled feeling uncomfortable because Derian's family arrived at the bar and "wouldn't stop staring and just, like, making it clear that they had a problem with us." Josephine "Angel" Villeda, Derian's mother, and Appellant, Derian's aunt, attempted to speak with Ariana throughout the night. Ariana "made it clear" that she did not want to talk to Josephine or Appellant. Wallis assumed that the confrontations were related to issues with Alexis.

Later that night, Josephine walked up to Ariana, grabbed her by the arms, and began shaking her while trying to talk to her. Wallis testified that she intervened and placed her arms between the two while asking Josephine to let go of Ariana. Appellant grabbed a drinking glass out of Wallis's hand. Wallis attempted to leave the confrontation and told Appellant she could keep the drinking glass. When Wallis turned to leave, Josephine grabbed Wallis's ponytail, pulled her to the ground, and sat on her. Wallis testified that Josephine and Appellant began hitting her while she was "pinned" to the ground underneath Josephine.

Wallis testified that Appellant did not set the drinking glass down. Wallis said that she used her hands to defend herself and that, although her eyes were closed, she recalled being "struck by a very blunt force object that felt exactly like a glass in my eye." Wallis was immediately unable to see out of the eye that was hit and

2

was in extreme pain. Wallis testified that other people joined in the fight and a barroom brawl ensued before bar security ended the fight and escorted the parties outside.

Ariana testified that Josephine tried speaking with her throughout the night before grabbing her around the time of last call. Ariana told Josephine that she did not want to speak with her, and Wallis put her arms between the two and told Josephine to "get her f-----g hands off of [Ariana]." Ariana saw Appellant take the glass from Wallis's hand and saw Josephine pull Wallis to the ground. Ariana did not see Appellant hit Wallis in the face with a glass because Ariana was pulled away from the altercation.

Thorndyke testified that a group of women approached Ariana and Wallis. Thorndyke stepped in after seeing one woman grab Ariana and another woman raise her fist. Thorndyke was quickly taken "out of the action" after a third woman grabbed her hair and hit her in the nose. Thorndyke was unable to recall "who did what to whom."

Contreras testified that she saw Wallis on the ground with a woman on top of her, but security had already pulled the woman off Wallis by the time Contreras was able to get to her.

Testifying for the defense, Derian testified that he watched Josephine approach Ariana and Wallis and saw Wallis attack Josephine first. Derian testified that Josephine defended herself against Wallis. Derian testified that Josephine and Wallis were hitting each other and both women fell to the ground. Derian described the altercation as "a mess" with hair pulling and thrown glasses. Derian testified that Appellant was not involved in the altercation.

After both parties were escorted out of the bar, Wallis drove home even though she "could not see out of [her] eye." Wallis realized that she needed immediate medical attention after feeling her eyeball protrude from her face while

3

blowing her nose. Wallis's mother took her to a local emergency room and Wallis was transported from there to John Peter Smith Hospital (JPS) in Fort Worth to see a specialist. Wallis had suffered an orbital socket fracture that required surgery.

Dr. Herman Kao, a maxillofacial surgeon at JPS, repaired Wallis's orbital socket fracture. Dr. Kao agreed that Wallis could have possibly suffered a serious bodily injury, such as disfigurement, if she had not had surgery to repair the fracture. Dr. Kao testified that, were someone to be hit in the eye with a drinking glass like the one from Guitars and Cadillacs, that person could suffer a rupture of the eyeball itself or a fracture of the eye socket. During cross-examination, Dr. Kao agreed that the type of fracture Wallis suffered could also have been caused by a blunt trauma such as falling onto a concrete floor.

Wallis spoke to two police officers and several healthcare professionals about the cause of her injury. Officer Cati Wolfe with the Abilene Police Department was unable to gather many details from her interview with Wallis because Wallis was sedated at the time Officer Wolfe attempted to interview her. Officer Wolfe recalled Wallis telling her a drink had been taken out of her hand and she was scared she was going to be hit with the glass. Detective John Wilson was able to confirm that Wallis told him she had, in fact, been hit in the face with the glass. Wallis's medical records listed the causes of Wallis's injury as being struck in the face with fists and having her head "slammed into the concrete." Appellant's trial counsel primarily focused on "inconsistencies" in Wallis's recounting of the incident—namely, whether she told various individuals that Appellant had hit her in the face with a glass.

The State introduced screenshots of two social media posts Appellant had made about the incident. In the screenshots, Appellant admits to "busting [a woman's] face with a glass" and "f-----g up some b----'s face" during a "brawl" at Guitars and Cadillacs.

4

*Analysis*

Appellant asserts that there is insufficient evidence that she injured Wallis with a deadly weapon. We note that Appellant's issue is limited to the allegation that she used a deadly weapon to assault Wallis.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

As relevant to this appeal, a person commits the offense of aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. PENAL §§ 22.01(a)(1), 22.02(a)(2). Here, the State was required to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to Wallis and that she used a deadly weapon, a drinking glass, during the commission of the assault. *Id.* at §22.02(a)(2).

Appellant does not contend that a drinking glass cannot be used as a deadly weapon. *See id.* at § 1.07(a)(17)(B) (A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."). Rather, Appellant contends that the jury's determination that Appellant hit Wallis with a drinking glass was irrational in light of all the evidence. Appellant asserts that a combination of Dr. Kao's testimony that Wallis's injury could have been caused by a fist or by a fall, Wallis's statements in her medical records, in which she describes being struck in the head with fists and "slammed" onto concrete, and the fact that no other eyewitness saw Appellant hit Wallis with a glass outweighs the evidence supporting the jury's finding that Appellant hit Wallis with a drinking glass.

Appellant is incorrect in asserting that there is insufficient evidence that she struck Wallis with a glass. Wallis testified that she was "struck by a very blunt force object that felt exactly like a glass in [her] eye." She also told Detective Wilson that Appellant hit her in the face with a glass. Dr. Kao testified that Wallis's injuries could have occurred in several different ways—including being hit in the face with a glass. Wallis testified that she was unsure whether she told medical professionals or Officer Wolfe about the glass and explained that her being stressed and upset from the recent trauma she sustained could account for her not "relay[ing] every bit of detail." Moreover, although Derian testified that Appellant was "nowhere involved"

6

in the altercation, Wallis testified that she was certain Appellant struck her. Ariana saw Appellant take the glass from Wallis's hand, and the security video shows a security guard removing Appellant from the area of the altercation. Finally, and perhaps most notably, Appellant posted on social media that she was involved in a "brawl" at Guitars and Cadillacs and that she "busted" a person's face with a glass.

The question of whether Appellant struck Wallis in the eye with a glass was inherently a credibility issue for the factfinder to resolve. We defer to the factfinder's role as the sole judge of the witnesses' credibility. *See Brooks*, 323 S.W.3d at 899. Additionally, the jury, as the factfinder, is solely responsible for resolving conflicts in the evidence. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Viewed in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed aggravated assault against Wallis by striking her with drinking glass. We overrule Appellant's sole issue.

We note, however, that the trial court's judgment (1) incorrectly reflects the statute of conviction; and (2) does not include the affirmative deadly weapon finding. As we previously noted, Appellant was charged and convicted of aggravated assault as the offense is set out in Section 22.02(a)(2) of the Texas Penal Code. However, the trial court's judgment incorrectly lists Section 22.02(a)(1) as the statute of conviction.

Additionally, after the trial court pronounced Appellant's punishment, the prosecutor stated to the trial court, "I know the deadly weapon was alleged in the indictment; but we'd ask that the Court make a deadly weapon finding." The trial court responded that "[t]he deadly weapon was part of the charging instrument. The Court finds -- the jury made that affirmative finding, and the Court adopts the

affirmative finding of the deadly weapon use. That is made." Accordingly, we treat the omission of the affirmative deadly weapon finding as a clerical error. *See Guthrie-Nail v. State*, 506 S.W.3d 1, 5, 7 (Tex. Crim. App. 2015) ("If [the factfinder] necessarily made a deadly-weapon finding when it found the defendant guilty as charged in the indictment for an offense that contained a deadly-weapon element, then [the trial court] was required to enter that finding in the judgment."); *see also Duran v. State*, 492 S.W.3d 741, 745–47 (Tex. Crim. App. 2016).

An appellate court has the power to modify the trial court's judgment to make the judgment speak the truth when it has the necessary information before it to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Because we have the necessary information to make the judgment speak the truth, we modify the judgment of the trial court to reflect the statute of conviction, Texas Penal Code § 22.02(a)(2), and to include an affirmative deadly weapon finding.

### This Court's Ruling

As modified, we affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


December 21, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.