COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RAYMOND DIEGO REYES, | § | No. 08-23-00125-CR |
| Appellant, | § | Appeal from the |
| v. | § | 218th Judicial District Court |
| THE STATE OF TEXAS, | § | of Atascosa County, Texas |
| Appellee. | § | (TC#21-02-0083-CRA) |

## MEMORANDUM OPINION

Appellant Raymond Diego Reyes pled guilty to intoxication manslaughter and intoxication assault and was sentenced to concurrent 16 and 10-year prison terms. TEX. PEN. CODE ANN. §§49.07(c); 49.08(b). He appeals his conviction, arguing that his plea was involuntary because his attorney provided ineffective assistance of counsel.[1] For the reasons stated below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of August 13, 2020, Philip Smith rear-ended a tractor trailer that was pulling into a gas station off Highway 16 in Atascosa County. The accident disabled Smith's vehicle, and

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* TEX. R. APP. P. 41.3.

it remained in the road. Danielle Gonzalez, a nurse who happened to be driving by, stopped to help Smith. Moments later, Appellant collided with Smith's vehicle. The impact threw Smith into the median, causing fatal injuries, and severely injured Gonzalez. Law enforcement arrived on the scene and while investigating, asked Appellant to complete a field sobriety test, which he refused, saying that he is blind in one eye. At the hospital later that night, Appellant' blood work showed a blood alcohol level of .074 as well as the presence of cocaine and opiates.

Appellant was indicted and charged with intoxication manslaughter and intoxication assault. The indictment further alleges that "the defendant used a deadly weapon, to wit: a motor vehicle, during the commission of the offense."

Appellant entered an open plea. He pled guilty to both counts with no agreement with the State for punishment. Appellant judicially confessed to committing both offenses "exactly as charged within the indictment" and pled "true" to enhancement and special issues in the indictment. Appellant, his attorney, and the State signed "Agreed Punishment Recommendations" which state, "The parties agree to ask the court to asses[s] punishment anywhere within the full range of punishment, and in consideration for this agreement, the parties agree to waive their right to a jury trial and the right to appeal any judgment by the court." At the plea hearing, the trial court admonished Appellant that the intoxication manslaughter and intoxication assault charges were each punishable by up to 10 years in prison.[2] The trial court accepted Appellant' plea but did not make a deadly weapon finding and reset the case for a sentencing hearing so that a presentence investigation could be conducted.

---

[2] This statement is incorrect. Intoxication manslaughter is a second-degree felony, punishable by up to 20 years in prison. TEX. PEN. CODE ANN. §§12.33, 49.08(b). The written admonitions about the ranges of punishment, however, were correct, and Appellant has not raised the discrepancy as error in this appeal.

Although there was no plea agreement or punishment recommendation, the trial court signed an order stating:

> After having agreed to assess punishment consistent with the plea agreement, the Court hereby finds that the Defendant understands the consequences of waiving the right to a motion for new trial, motion in arrest of judgment or file a notice of appeal . . . . The Defendant voluntarily, knowingly and intelligently waived such right. Said waiver is accepted by the Court.

That same day, the trial court also signed a certification of Appellant' right of appeal which stated that Appellant' case was not a plea-bargain case and that he has the right to appeal the sentence.

In February 2023, the trial court held a sentencing hearing. Along with testimony from the probation department about the presentence investigation, the court also heard testimony about how the accident impacted the lives or families' lives of Philip Smith and Danielle Gonzalez. Kayla Jordan-Tschirhart, Philip Smith's widow, was 31 years old when Smith was killed. She and Smith had children and Smith also had three older children from a prior relationship. Tschirart testified about how her life has changed and the difficulties her children have now, and will continue to have, coping with the loss of their father. Philip Smith was the sole-provider for the family and Kayla described her financial struggles following Smith's death.

Danielle Gonzalez was 27 years old at the time of the accident and has two children. Before the accident, Gonzalez was independent and physically active, but now must rely on others for many basic life functions. Her injuries impaired her vision and she cannot use the right side of her body. She lost the ability to walk. She struggles with memory and depression. Before the accident she was employed as nurse, but can no longer perform gainful employment.

Appellant also testified at the sentencing hearing. He claims that it was dark at the time of the accident and he did not see Smith's vehicle until he hit it. He also admitted, however, that about an hour before the collision he drank two or three beers and ingested cocaine and marijuana. He

was questioned about his criminal history, which included two prior terms of probation–in 1993 for assault and in 2004 for possession of marijuana. Both probations led to revocations. In closing, Appellant' counsel requested that the court give him community service.

After the hearing, the trial court made a finding that Appellant used a deadly weapon in commission of the crimes and sentenced him to 16 years for intoxication manslaughter and 10 years for intoxication assault, with the terms to run concurrently.

In his one issue on appeal, Appellant claims that his trial counsel provided ineffective assistance of counsel and his guilty plea was therefore involuntary. Specifically, Appellant contends that his attorney requested that the court order community service, but because of the deadly weapon finding, community service "could never have been granted."

## ANALYSIS

### A. Waiver of right to appeal

The State argues that Appellant waived his right to appeal. Because a valid waiver of the right to appeal deprives us of subject-matter jurisdiction, we address this issue first. *Thomas v. State*, 615 S.W.3d 552, 563 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Texas law grants criminal defendants the right to appeal. TEX. CODE CRIM. PROC. ANN. art. 44.02; TEX. R. APP. PROC. 25.2. That right can be waived, but the waiver must be made "voluntarily, knowingly, and intelligently." TEX. CODE CRIM. PROC. ANN. art. 1.14; *Ex parte Delaney*, 207 S.W.3d 794, 796-97 (Tex. Crim. App. 2006). When a defendant waives his right to appeal as part of a plea bargain that includes a sentencing recommendation, the waiver is made with the knowledge of what the consequences will be and is therefore valid.[3] *Id*. at 799; *Blanco v.*

---

[3] A trial court is not obligated to follow the State's sentencing recommendation. TEX. CODE CRIM. PROC. ANN. art. 26.13. But if it does not, the defendant can withdraw his agreement to the plea bargain. *Id.*

4

*State*, 18 S.W.3d 218, 219–20 (Tex. Crim. App. 2000) (en banc). But in open plea cases like this one, when a criminal defendant pleads guilty without an agreement about sentencing, "the validity of a pretrial waiver of appeal is in question because the waiver cannot be knowing and intelligent when potential errors cannot be anticipated and the consequences of the waiver are unknown." *Delaney*, 207 S.W.3d at 798. For these kinds of appeal waivers to be valid, the State must provide consideration for the waiver. *Compare Jones v. State*, 488 S.W.3d 801, 804 (Tex. Crim. App. 2016) (defendant's waiver of appeal was valid because the State provided consideration by abandoning one of its enhancement paragraphs), *with Washington v. State*, 363 S.W.3d 589, 590 (Tex. Crim. App. 2012) (per curiam) (defendant's waiver of appeal was not valid because the record did not reflect that the State gave any consideration).

The State argues that by waiving its right to a trial by jury, or consenting to Appellant' waiver of a jury trial, it provided consideration. But, *Carson v. State*, cited by the State for this proposition actually holds that "[c]onsent to proceed to a bench trial, thus waiving the right to a jury trial, *by itself is not sufficient* to qualify as consideration for defendant's waiver of his right to appeal." *Carson v. State*, 559 S.W.3d 489, 494 (Tex. Crim. App. 2018) (emphasis added). The record must reflect that the State's waiver of a jury trial was given "in exchange for" the defendant's appeal waiver. *Id.*

For example, in *Ex Parte Broadway*, the defendant pled guilty but did not want a jury to determine his sentence because only a court could place him on community supervision with drug treatment. *Ex parte Broadway*, 301 S.W.3d 694, 696 (Tex. Crim. App. 2009) (en banc). But the record showed that the State wanted sentencing by a jury and would only consent to the defendant's waiver of a jury trial if the defendant also waived his right to appeal. *Id*. at 698. The court held that because his appeal waiver resulted from a bargain, it was valid. *Id.* at 697–98. Similarly, in *Carson*

5

*v. State*, the defendant did not want a jury trial because he believed that he could receive a more favorable sentence from the trial court. *Carson*, 559 S.W.3d at 495. And the State's position was, "if we're going to have to do an appeal and everything then we might as well go to a jury trial." *Id*. Therefore, for the defendant to get sentencing by the trial court, he agreed to waive his right to appeal. *Id.* The court held that the defendant "negotiated a bargain" and his "waiver was made in exchange for consideration given by the State and, thus was voluntary, knowing and intelligent." *Id.* at 496.

Unlike *Broadway* and *Carson*, the record here does not show that the State wanted a jury trial and that it would only agree to forgo one if Appellant agreed to waive an appeal. At the plea hearing, Appellant agreed that he waived the right to appeal, but there was no testimony or other evidence that he did so because of the State's waiver of the right to a jury trial. The only mention of the waiver of a jury trial at the plea hearing is Appellant' acknowledgment that he (not the State) waived the right to a jury. Nor does the waiver of the right to appeal reflect any bargained for consideration. The agreed punishment recommendations recite, "The parties agree to ask the court to assess punishment anywhere within the full range of punishment, and in consideration for this agreement, the parties agree to waive their right to a jury trial and the right to appeal any judgment by the court."[4] By its terms, the waiver of the right to a jury was not consideration for Appellant's appeal waiver. Rather, both Appellant and the State waived the right to a jury trial, and they did so *along with* waiving the right to appeal, not *in exchange* for Appellant' waiver of the right to

---

[4] The "Waivers, Stipulation, Confession, and Agreement" signed by Appellant also contains waivers of the right to appeal as follows: "[Having] been informed of the limited right to . . . file a notice of appeal with the court of appeals, in a plea bargain case, and after having consulted with my attorney, I hereby waive those rights . . ." and "I agree to plead guilty (or nolo contender) to the above specified offenses), true to enhancement and special issues, if any, in the indictment or information, judicially confess, and waive any right to a motion for new trial and appeal . . . ." Neither statement of waiver recite consideration given by the state.

6

appeal. On this record, there is no evidence that the State's waiver of a jury trial was a bargained-for benefit to Appellant for which gave up a right of appeal.[5] *Thomas*, 615 S.W.3d at 564 (the record did not show consideration because it reflected "that appellant and the State negotiated for both parties to give up their right to a jury trial in exchange for appellant's guilty plea—not for her waiver of her right to appeal").

## B. Ineffective assistance of counsel

On the merits, Appellant sole issue claims that his attorney incorrectly believed that he was eligible for community service and that he therefore provided ineffective assistance of counsel, rendering his plea involuntary.

"A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and knowingly." *Ex Parte Moussazadeh*, 361 S.W.3d 684, 688–89 (Tex. Crim. App. 2012). In reviewing an ineffective assistance of counsel claim based on an attorney's advice of the consequences of his guilty plea, courts apply the two-prong standard announced in *Strickland v. Washington*. *Ex Parte Moussazadeh*, 361 S.W.3d at 690–91; *Strickland v. Washington*, 466 U.S. 668, 687, (1984). The defendant must show both that (1) his attorney's performance was deficient and that (2) "but for the erroneous advice of counsel, [he] would not have plead guilty." *Moussazadeh*, 361 S.W.3d at 690–91.

To make a successful ineffective assistance of claim, "the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim.

---

[5] Unlike *Ex parte Broadway*, in which sentencing by the court allowed for the possibility of community supervision, there was no apparent benefit to Appellant from the State's waiver of a jury. *Ex parte Broadway*, 301 S.W.3d 694, 696 (Tex. Crim. App. 2009) (en banc). A jury is not prevented from recommending community supervision even if it finds that a deadly weapon was used in commission of a crime. TEX. CODE CRIM. PROC. ANN. art. 42A.054(b), 42A.056. A judge cannot. *Id*. Therefore, community service was just as much, if not more, of an option for Appellant if the jury determined sentencing.

7

App. 1996) (en banc), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) (en banc). Ineffective assistance of counsel claims present challenges on direct appeal because the record about trial counsel's errors is usually undeveloped. *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). More often, these claims are raised in a motion for new trial or petition for writ of habeas corpus, where the defendant and trial counsel can present the relevant facts on the record. *Id.* at 814; *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (en banc).

Appellant points to his trial counsel's repeated requests for community supervision at the sentencing hearing as evidence that his trial counsel believed that he was eligible for community supervision. The record lacks evidence about what advice Appellant was given and whether he relied on it. But we focus on the initial premise of Appellant' argument–that his attorney incorrectly believed he was eligible for community supervision.[6]

The Code of Criminal Procedure grants a trial court the authority, subject to important limitations, for at least two non-prison alternatives for punishment following a finding of guilt. A trial court might place a defendant on deferred adjudication community service under TEX. CODE CRIM. PROC. ANN. art. 42A.102. But excluded from that option are offenses under Section 49.07 (intoxication assault) and 49.08 (intoxication manslaughter) of the Penal Code. TEX. CODE CRIM. PROC. ANN. art. 42A.102(b)(1)(A); TEX. PENAL CODE ANN. § 49.07, § 49.08. Another non-prison alternative is judge ordered community supervision under Article 42A.053. TEX. CODE CRIM.

---

[6] In *Tabora v. State*, the 14th Court of Appeals held that trial counsel's repeated requests for "deferred" constituted sufficient evidence that he incorrectly believed his client was eligible for deferred adjudication, meeting the first prong of the *Strickland* test. 14 S.W.3d 332, 336-37 (Tex. App.—Houston [14th Dist.] 2000, no pet.). But those requests were not sufficient to show that the attorney advised the defendant that he was eligible for deferred adjudication or that the defendant relied on that advice. *Id.*

PROC. ANN. art. 42A.053. But it has two limitations relevant here. First, a trial court is prohibited from ordering community service if a defendant is sentenced to more than ten years. *Id*. art. 42A.053(c). Second, a trial court is prohibited from placing a defendant on community service when there is a finding that "a deadly weapon . . . was used or exhibited during the commission of a felony offense." TEX. CODE CRIM. PROC. ANN. art. 42A.054(b)(1)(A). Whether or not to make that finding, however, is completely discretionary. *Guthrie-Nail v. State*, 506 S.W.3d 1, 6 (Tex. Crim. App. 2015) ("[A] trial judge has the discretion to decline to make a deadly-weapon finding even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element."); *see also Shute v. State*, 945 S.W.2d 230, 232 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("[A] trial court, in a trial to the bench, has complete discretion to refuse to make an affirmative deadly weapon finding, even though the State has met its burden of proof on the deadly weapon issue."); *Campos v. State*, 927 S.W.2d 232, 236 (Tex. App.—Waco 1996, no pet.) ("Although [defendant] was indicted for use of a deadly weapon and pled nolo contendere the accusations, we believe the making of an affirmative [deadly weapon] finding was within the court's discretion.").

Despite Appellant's plea, the trial court retained the discretion to make, or not make, a deadly weapon finding. *Rodriguez v. State* is almost factually and procedurally identical to this case. *Rodriguez v. State*, 933 S.W.2d 702 (Tex. App.—San Antonio 1996, pet. ref'd). In that case, the defendant, Rodriguez, was driving while intoxicated and caused a collision which resulted in the death of the passenger of the other vehicle. *Id.* at 704. He pled guilty to intoxication manslaughter, but there was no agreement regarding his sentence. *Id.* At a subsequent sentencing hearing, the trial court sentenced Rodriguez to 17 years. *Id*. Rodriguez then appealed, claiming that the trial court failed to admonish him about his ineligibility for community supervision and,

9

like this case, his trial counsel did not correctly advise him about the possibility of community service. *Id*. at 704, 706.[7] The court of appeals affirmed the judgment because at the time of Rodriguez's plea, he *was* eligible for community supervision. The court reasoned:

> The trial court's finding of Rodriguez' guilt at the plea hearing also did not automatically signify that the judge had found, or was going to find, that a deadly weapon was used in the commission of the crime. Neither did a finding of guilt signify that the trial court was going to sentence Rodriguez to serve more than ten years in prison. As noted, either one or both of those occurrences would have made Rodriguez ineligible for community supervision, but at the time of the plea it was an open question as to what the judge was going to do. The judge did not make the affirmative finding of the use of a deadly weapon until *after* he sentenced Rodriguez to seventeen years imprisonment. Thus, at the time Rodriguez entered his plea, the admonishments were accurate and did not misstate Rodriguez' eligibility for community supervision.

*Id.* at 705 (internal citations omitted); *see also Graves v. State*, 803 S.W.2d 342, 347 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (holding that because probation was possible until the court sentenced the defendant, his trial counsel did not misinform him about his eligibility for probation or provide ineffective assistance of counsel); *Ballard v. State*, No. 04-14-00603-CR, 2015 WL 6736767, at *2 (Tex. App.—San Antonio Nov. 4, 2015, no pet.) (not designated for publication) (holding no ineffective assistance of counsel because "until the trial court entered the [deadly weapon] affirmative finding, the trial court could still suspend Ballard's sentence and place him on community supervision").

At the time of Appellant's guilty plea, the trial court had not made a deadly-weapon finding. Therefore, Appellant's trial counsel could have been correct–Appellant was eligible for

---

[7] The limitations on court-ordered community supervision in effect at the time of the *Rodriguez* case were found in Article 42.12 of the Texas Code of Criminal Procedure which has been repealed and recodified as Article 42A.054. *See* Act of June 17, 2015, 84th Leg., R.S., ch. 770, § 1.01, 2015 Tex. Gen. Laws 2321, 2321–65.

community service. It was not until the trial court announced its ruling after the sentencing hearing and made that deadly-weapon finding that Appellant became ineligible for community service.[8]

Because Appellant has not met the first prong of the *Strickland* standard by showing that his attorney's performance was deficient, we need not determine whether the record affirmatively shows that Appellant's attorney advised him about community service and that he relied on that advice.

## CONCLUSION

Appellant's appeal is authorized because the State did not provide consideration in exchange for his waiver of the right to appeal. That said, Appellant's guilty plea is valid because his attorney's belief that he was eligible for community service was correct and Appellant has not shown that he provided ineffective assistance of counsel. We affirm the judgment below.

JEFF ALLEY, Chief Justice

January 25, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

---

[8] For that matter, Appellant does not address how the trial court's discretionary decision to assess a 16-year sentence for the intoxication manslaughter charge would have also made him ineligible for community service on that charge. TEX. CODE CRIM. PROC. ANN. art. 42A.053(c) (community service not available when the prison term exceeds ten years). Appellant does not argue that his trial counsel misunderstood this prohibition.